IN THE CIRCUIT COURT OF ST. LOUIS CITY
STATE OF MISSOURI

| | |
|---|---|
| ELEANOR BACHMAN, Individually and On Behalf of All Others Similarly Situated, <br><br> and <br><br> KAROL B. MCCLINTOCK and KAROL B. MCCLINTOCK, IRA, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> vs. <br><br> AG EDWARDS, INC., <br><br> Serve: Douglas L. Kelly <br> One North Jefferson <br> St. Louis, Missouri <br><br> and <br><br> AG EDWARDS & SONS, INC., <br><br> Serve: Douglas L. Kelly <br> One North Jefferson <br> St. Louis, Missouri <br><br> Defendants. | Cause No.: 052-11266 <br><br> Division: 18 |

## PETITION FOR BREACH OF FIDUCIARY DUTY AND UNJUST ENRICHMENT

1. This is a class action for breach of fiduciary duties and unjust enrichment on behalf of current and former clients of defendants A.G. Edwards, Inc. ("A.G. Edwards") and A.G. Edwards & Sons, Inc. ("A.G. Edwards & Sons") (collectively referred to as "Defendants") who have maintained an account at A.G. Edwards and who held shares of any mutual funds offered by any of A.G. Edwards' preferred mutual fund families, including, but not limited to, the

Hartford Funds, American Funds, Oppenheimer Funds, Evergreen Investments, and Dreyfus Funds during the period April 12, 2000, through April 12, 2005 (the "Class Period").

2. This action arises from Defendants' secretly collecting millions and millions of dollars in undisclosed and improper kickbacks paid to the Defendants by certain preferred mutual fund families. These secret kickbacks provided undisclosed and improper compensation to the Defendants, while the preferred funds received increased visibility in the Defendants' extensive mutual fund distribution network.

3. The undisclosed kickbacks paid to Defendants created unmanageable and continuing conflicts of interest and breaches of fiduciary duties by Defendants and allowed Defendants to profit secretly from the assets they hold in trust for their clients.

4. Revenue sharing is a device through which mutual fund companies kickback a portion of their profits to the brokers. The revenue sharing profits, or kickbacks, at issue here were paid quarterly by the preferred mutual funds or at other regular intervals during the time that Defendants' clients held shares of the funds. Defendants have collected tens of millions of dollars in revenue sharing from these preferred mutual fund companies.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this civil action pursuant to Section 478.070, RSMo.

6. Pursuant to Section 508.040, RSMo, venue is proper in the City of St. Louis because Defendants have an office or offices within the jurisdiction that is/are used for the transaction of its usual and customary business.

## PARTIES

7.　Plaintiff Karol B. McClintock is an Arizona resident who has an account at A.G. Edwards in which she holds the Oppenheimer Capital Income Fund.

8.　Plaintiff Karol B. McClintock, IRA, has an account at A.G. Edwards in which it holds the following American funds: Bond Fund of America, American High Income Trust, Euro-Pacific Growth Fund, The Growth Fund of America, Intermediate Bond Fund of America, The New Economy Fund, New World Fund, Small Cap World Fund, Washington Mutual Investors Fund.

9.　Plaintiff Eleanor Bachman is a Pennsylvania resident who has an account at A.G. Edwards in which she holds shares in the following American Funds: Income Funds of America and Capital Fund. Plaintiffs are hereinafter referred to collectively as "Plaintiffs."

10.　A.G. Edwards is a Delaware corporation maintaining its headquarters in St. Louis, Missouri. A.G. Edwards & Sons, Inc., is a national investment firm, and A.G. Edwards's principal subsidiary and successor to a partnership founded in 1887.

11.　A.G. Edwards & Sons is a financial services holding company, is a member of all major securities exchanges, and is registered by the National Association of Securities Dealers ("NASD") and Securities Investor Protection Corporation ("SIPC"). A.G. Edwards & Sons has approximately 715 locations in the United States, the District of Columbia, and London, England, and more than 16,100 full-time employees, including approximately 6,900 financial consultants providing services for approximately 3,600,000 clients. A.G. Edwards & Sons primarily acts as a full-service brokerage firm for individual clients, acting through one of the largest retail branch office networks in the United States.

12.     Defendants are sued herein as either primary participants in the wrongful and illegal conduct charged herein, or as a controlling person, agent and/or the alter ego of each other.

### ABSENCE OF GROUNDS FOR REMOVAL TO FEDERAL COURT

13.     Plaintiffs, for themselves and all others similarly situated, specifically disclaim any cause of action or right to relief based in any way upon federal law, whether pursuant to federal statute, federal common law, or the Constitution of the United States of America. Plaintiffs further disclaim any cause of action or right to relief arising in connection with their purchase or sale of any security, including their purchase or sale of the mutual funds at issue herein. Plaintiffs' common law claims are not preempted by any federal law or statute in that none of the claims arises in connection with the purchase or sale of a security. Because their causes of action are based solely and exclusively upon the common law of the State of Missouri, Plaintiffs disavow the existence of federal subject matter jurisdiction.

14.     Additionally, neither Plaintiffs nor any class member seek damages in excess of seventy-five thousand dollars ($75,000.00), including punitive damages. Thus, this case may not in good faith be removed to Federal Court because no Plaintiffs' or Class members' individual claim exceeds the amount in controversy necessary for diversity jurisdiction. The claims of individual class members cannot be aggregated to satisfy the amount in controversy requirement. *See Zahn v. Int'l Paper Co.*, 414 U.S. 291 (1973).

15.     Plaintiffs' claims involve Defendants' receipt and retention of kickbacks from the preferred funds on a quarterly or other regular periodic basis while Plaintiffs and the Class members were simply holding their shares.

16.     This case solely involves claims that relate to the state law rights, fiduciary duties, agency duties and obligations relating to Defendants' holding of their clients' interests in mutual funds, which are "securities" under section 2(a)(1) of the Securities Act of 1933. 15 U.S.C. 77b(a)(1). Therefore, in accordance with the Class Action Fairness Act of 2005, the Federal District Courts do not have jurisdiction over this action and removal would be improper. *See* 28 U.S.C § 1332(d)(9)(C).

## CLASS ACTION ALLEGATIONS

17.     Plaintiffs bring this action as a class action pursuant to Missouri Supreme Court Rule 52.08 on behalf of a Class (the "Class"), consisting of all persons or entities who maintained an account with Defendants in which any of the Defendants' preferred mutual funds were held during the Class Period. Excluded from the Class are Defendants, the officers and directors of the Defendants, members of their immediate families and their legal representatives, heirs, successors or assigns, any entity in which Defendants have or had a controlling interest, and any entity affiliated with any of the preferred funds.

18.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and can only be ascertained through appropriate discovery, Plaintiffs believe that there are thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Defendants and/or may be notified of the pendency of this action by mail and/or through publication.

19. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct and violation of law that is complained of herein.

20. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class litigation.

21. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class, which questions predominate over individual questions, are:

    a. whether the Defendants are fiduciaries to Plaintiffs and the other members of the Class;

    b. whether the Defendants are agents of Plaintiffs and the other members of the Class;

    c. whether Defendants hold the assets of Plaintiffs and the other members of the Class in trust;

    d. whether Defendants breached their fiduciary and agency duties to Plaintiffs and other members of the Class by receiving and/or retaining kickbacks in exchange for their clients holding shares in mutual funds of the preferred mutual fund families;

    e. whether Plaintiffs and the other members of the Class are entitled to restitution or disgorgement as a result of the Defendants' breach of fiduciary duties; and

    f. whether Defendants have improperly benefited or have been unjustly enriched from breaches of fiduciary duties and conflicts of interest.

22. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making it appropriate to order final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. Furthermore, as the damages suffered or rights to restitution or disgorgement by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them. In addition, absent a class action, there is a significant risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Defendants. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

**Background**

23. Defendants have roots dating back to 1887 and cater primarily to individual investors. A.G. Edwards & Sons is one of the largest brokerage firms in the nation, with more than 7,000 financial consultants at over 700 locations. A.G. Edwards & Sons has approximately 3.6 million individual customers.

24. As a "full service" retail brokerage firm, A.G. Edwards & Sons and its individual brokers owe uncompromising duties of care, good faith, loyalty and candor to their clients. As fiduciaries, agents and trustees, brokers are required to disclose any conflict of interest to their clients and are further required to disclose and credit their clients with any and all remuneration they receive as a benefit for keeping their clients holding the preferred mutual funds.

25. In public statements on their website, Defendants claim that they want to help every kind of investor, regardless of account size, and treat every investor as their most important client.

26. Defendants have agreements with over one hundred mutual fund companies from which their brokers may recommend thousands of mutual funds. Nevertheless, a significant number of the mutual funds held by A.G. Edwards & Sons' clients are those funds who paid to stay, *e.g.*, the preferred mutual funds who paid Defendants kickbacks in exchange for the maintenance of preferred fund shares in the accounts of A.G. Edwards clients. During the Class Period, the Defendants had ongoing pay to stay arrangements with at least the following mutual fund families: The Hartford, American, Oppenheimer, Evergreen and Dreyfus.

27. A.G. Edwards's most recent Form 10-K, dated May 14, 2004, for the year ended February 29, 2004, admits that the Defendants' practices are being investigated by various regulatory bodies and/or Congress as part of their ongoing investigation in the mutual funds industry:

> The SEC, the NASD and other regulators, as well as Congress, are examining the manner in which mutual funds compensate broker-dealers for the sale of their shares. *Edwards has provided information in connection with certain related examinations.* Future regulatory changes may require additional disclosure by mutual fund companies and broker-dealers or changes in the methods of compensating broker-dealers for mutual fund sales.
>
> The Company is not able to predict whether industry-wide changes will occur or the possible impacts, if any, should changes be adopted.

(emphasis added).

28.  A.G. Edwards's most recent Form 10-Qs, dated January 10, 2005, for the quarter ended November 30, 2004, dated October 12, 2004, for the quarter ended August 31, 2004, and dated July 9, 2004, for the quarter ended May 31, 2004, respectively, also discuss efforts taken by regulators to investigate Defendants' practices:

> The SEC, the National Association of Securities Dealers ("NASD") and other regulators, as well as Congress, have examined or are examining the manner in which mutual funds compensate broker-dealers in connection with the sale of mutual funds. *The Company has provided information in connection with certain related examinations.* Regulatory changes may require additional disclosures by mutual fund companies, broker-dealers or both and may affect the methods of compensating broker-dealers for mutual fund sales.

(emphasis added).

29.  The true material facts, based on information and belief, that were concealed throughout the Class Period include the following:

- Defendants were major participants in pay to stay activities in the industry during the Class Period, which activities constituted numerous, insurmountable, material and undisclosed conflicts of interest.

- Defendants had pay to stay arrangements with at least the following mutual fund families: Hartford, American, Oppenheimer, Dreyfus, and Evergreen, who had ongoing revenue sharing/kickback arrangements with Defendants during the Class Period.

- American Funds made revenue sharing payments to A.G. Edwards on a quarterly basis. These payments were referred to as "Selective Revenue." They were in the form of basis points and were tied to total assets under management. The payments made were ten basis points per year. Based on assets under management, on one American Fund 2-1/2 basis points were paid for "Selective Revenue." American Funds was paying at least $750,000 annually for shelf space at A.G. Edwards.

- Oppenheimer also had a pay to stay arrangement with A.G. Edwards whereby Oppenheimer obtained preferred listings. During the Class Period, 12b-1 fees were being used to pay brokers, including A.G. Edwards, not for marketing or

9

- advertising the funds, but rather as simply part of the brokers' ongoing compensation.

- In exchange for Defendants' clients' maintaining preferred fund shares in their A.G. Edwards accounts, the preferred mutual funds agreed to pay and did pay substantial kickbacks to Defendants.

- Unbeknownst to Plaintiffs and the other members of the Class, the mutual fund families are preferred because they make substantial, undisclosed, and regularly scheduled kickbacks to the Defendants for each year (or portion thereof) that the Defendants' clients maintain investment positions in the preferred funds.

30. Unbeknownst to its customers, Defendants received payments on a quarterly or other periodic basis for each year that the Defendants' client held shares in one or more funds of the preferred fund families. These undisclosed payments provided Defendants with a secret incentive to support the continued holding of those investments for as long as possible, regardless of changes in circumstances that would otherwise cause a truly objective broker to recommend that the clients sell such shares. In breach of their fiduciary duties, Defendants acted in their own self interest and failed to disclose to Plaintiffs and the Class that they secretly profited from their client's investments in the preferred mutual fund families by receiving undisclosed payments based on their client's investments held in trust.

31. It is estimated that Defendants receive millions and millions of dollars per year from their secret pay to stay arrangements with the preferred fund companies.

32. At no time did Defendants or the preferred fund companies adequately disclose the existence and/or nature of the pay to stay kickbacks or of the conflicts of interest arising therefrom.

33. In 2003, the SEC initiated an action against the brokerage firm of Morgan Stanley for not disclosing kickbacks received from mutual funds. In November, 2003, Morgan Stanley

entered into a settlement with the SEC wherein, among other things, it: (i) agreed to pay $50 million in restitution to its clients who held funds from its "partner" list; and (ii) agreed to disclose fully the previously undisclosed payments it receives from its "partner" mutual funds.

34. Similarly, on December 22, 2004, the SEC, NASD, and the New York Stock Exchange announced settled enforcement proceedings against Edward D. Jones & Co., L.P., a registered broker-dealer headquartered in St. Louis, Missouri, related to allegations that Edward Jones failed to disclose adequately revenue sharing payments that it received from a select group of mutual fund families that Edward Jones recommended to its customers. As part of the settlement of all three proceedings, Edward Jones will pay $75 million in disgorgement and civil penalties.

### COUNT I – BREACH OF FIDUCIARY DUTY
### (Against both Defendants)

35. Plaintiffs incorporate by reference and reallege paragraphs 1-34 of this petition as if fully set forth herein.

36. Defendants owe their clients duties of care, good faith, loyalty and candor. Defendants owe certain fiduciary duties to their customers as their agents and as Trustees.

37. Defendants owe duties to manage the accounts as dictated by the customer's needs and objectives, to refrain from self-dealing, to disclose any self-interest and not to profit from the assets that they hold in trust for their clients.

38. Defendants, once they have received their customer's funds, are fiduciaries, agents and trustees with respect to those funds. Once the investment funds owned by the customer are held in trust by the broker, the broker may not utilize this possession for his own benefit or profit.

39. Defendants maintain a client account for Plaintiffs and the other members of the Class, which account holds mutual funds belonging to Plaintiffs and the Class. Defendants are under a strict duty to refrain from using those funds and wrongfully profiting from them.

40. Defendants received and retained payments based solely on the amount of money that their clients held in the preferred mutual funds. Thus, Defendants have breached their duty not to profit off of the assets that they hold in trust for Plaintiffs and the other members of the Class.

41. Defendants received quarterly or other periodic payments for each period that an A.G. Edwards client held shares in one or more of the preferred fund families. Defendants' duty to refrain from acting in their self-interest and from secretly profiting from their clients' assets continues after the purchase or sale of securities is complete. Thus, Defendants have breached their duty to refrain from self-dealing.

42. Defendants had a duty to disclose conflicts of interest. Defendants had a duty to disclose their self-interest every time they received a kickback payment, which occurred periodically during the time clients held their shares. At no time did the Defendants, or the preferred fund companies, adequately disclose the existence and/or nature of the pay to stay kickbacks or of the conflicts of interest. Thus, Defendants have breached their duty to disclose self-interest. Plaintiffs disclaim any charges regarding the duties of the broker during the sale or purchase of securities.

43. By receiving undisclosed profits in breach of their fiduciary duties, Defendants became trustees to Plaintiffs and the other members of the Class of all the amounts so wrongfully gained. Thus, Defendants were required to use their title to and control over the investments of

12

Plaintiffs and the other members of the Class solely for Plaintiffs' and the Class's benefit, and must disgorge any profits Defendants obtained using such investments. *See* Restatement Second of Agency §§ 387-88 (1958). Thus, Plaintiffs and the other members of the Class are entitled to an amount of the improper kickback payments.

44. By failing to inform Plaintiffs and the Class about the mutual fund fees they received from various mutual fund companies, Defendants willfully and maliciously breached their fiduciary duties to Plaintiffs and the Class, damaging them thereby.

45. Because Defendants' breaches of their fiduciary duties to Plaintiffs and the Class were willful and malicious, punitive damages are appropriate.

### COUNT II – UNJUST ENRICHMENT
**(Against Both Defendants)**

46. Plaintiffs incorporate by reference and reallege paragraphs 1-45 of this petition as if fully set forth herein.

47. Defendants have caused Plaintiffs and the other members of the Class to hold shares in the preferred mutual fund families based on their own bad faith, conflicts of interest and personal interests rather than in furtherance of their fiduciary duties owed to Plaintiffs and the other members of the Class. By receiving and retaining the secret payments alleged herein, and by failing to disclose such payments and the conflicts of interest arising therefrom, Defendants have unjustly profited from their conflicts of interest and breach of fiduciary duty to Plaintiffs and the other members of the Class. Thus, a benefit was conferred upon Defendants by Plaintiffs and the other members of the Class.

13

48. The payments were paid directly by the mutual fund companies to Defendants and not to Plaintiffs and the other members of the Class. An agent who makes a profit on behalf of the principal is under a duty to remit that profit to the principal absent an agreement to the contrary. *See* Restatement (Second) of Agency Section 388 (1958).

49. By receiving and retaining the secret payments alleged herein, and by failing to disclose such payments and the conflicts of interest arising therefrom, Defendants have unjustly profited from their conflicts of interest and breaches of fiduciary duty at the expense of Plaintiffs and the other members of the Class. Thus, a benefit was conferred upon Defendants by Plaintiffs and the other members of the Class.

50. Defendants received the secret kickbacks merely because of the shares Plaintiffs and the Class held of preferred mutual funds. A secret profit made in violation of a fiduciary duty rightfully belongs to the person to whom the fiduciary duty is owed. Defendants received the kickbacks as a result of breaches of fiduciary duties owed to Plaintiffs and the other members of the Class. Therefore, Defendants received secret profits in violation of fiduciary duties owed to Plaintiffs and the other members of the Class, whom have a right to these monies.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for relief and judgment, as follows:

A. Determining that this action is a proper class action and certifying Plaintiffs as the Class representatives and Plaintiffs' counsel as Class Counsel;

B. Against Defendants for compensatory and other damages sustained by Plaintiffs and all Class members as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.  Against both Defendants for punitive damages sustained by Plaintiffs and the other members of the Class as a result of Defendants' willful and malicious conduct;

D.  For an accounting of all sums received by way of the secret payments alleged herein;

E.  For return, forfeiture and/or disgorgement to Plaintiffs and the other members of the Class of all sums in which Defendants have been unjustly enriched as a result of their conflicts of interest, breaches of fiduciary duties and violations of trust;

F.  For injunctive, provisional and ancillary relief, including imposition of a constructive trust for the amount of undisclosed kickbacks received by the Defendants from the preferred mutual fund families;

G.  Awarding Plaintiffs and the other members of the Class their reasonable costs and expenses incurred in this action, including attorneys' fees and expert fees; and

H.  Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Respectfully submitted,

**BLITZ, BARDGETT & DEUTSCH, L.C.**

By: /s/ Robert D. Blitz
Robert D. Blitz (#24387)
R. Thomas Avery (#45340)
Christopher O. Bauman (#52480)
120 South Central Avenue, Suite 750
St. Louis, Missouri 63105
(314) 863-1500 (Tel)
(314) 863-1877 (Fax)

**MILBERG WEISS BERSHAD
& SCHULMAN LLP**
Steven G. Schulman (SS-2561)
Jerome M. Congress (JC-2060)
Kim E. Miller (KM-6996)
Michael R. Reese (MR-3183)
One Pennsylvania Plaza
New York, New York 10119-0165
(212) 594-5300 (Tel)
(212) 868-1229 (Fax)

**STULL, STULL & BRODY**
Jules Brody
Mark Levine
Aaron Brody
Bradley Dyer
6 East 45th Street
New York, New York 10017
(212) 687-7230 (Tel)
(212) 490-2022 (Fax)

*Proposed Co-Lead Counsel for Plaintiffs*

WEISS & LURIE
Joseph H. Weiss
551 Fifth Avenue
New York, New York 10176
(212) 682-3025 (Tel)

STANLEY, MANDEL & IOLA, L.L.P.
Matthew J. Zevin
550 West C Street, Suite 1600
San Diego, CA 92101
(619) 235-5306
(815) 377-8419 (Fax)

HULETT HARPER STEWART L.L.P.
Kirk B. Hulett
550 West C Street, Suite 1600
San Diego, CA 92101
(619) 338-1133 (Tel)

*Proposed Executive Committee for Plaintiffs*

LAW OFFICES OF CHARLES J. PIVEN, P.A.
Charles J. Piven
Marshall N. Perkins
The World Trade Center – Baltimore
401 East Pratt Street, Suite 2525
Baltimore, Maryland 21202
(410) 332-0030 (Tel)

GOODIN, MACBRIDE, SQUERI, RITCHIE & DAY, L.L.P.
Wayne T. Lamprey
505 Sansome Street, Suite 900
San Francisco, CA 94111
(415) 392-7900 (Tel)
(415) 398-4321 (Fax)

*Counsel for Plaintiffs*