**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| **ELEANOR BACHMAN, Individually and On Behalf of All Others Similarly Situated, et al.** | ) ) ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Cause No. 4:09-cv-00057** |
| | ) | |
| **A.G. EDWARDS, INC., et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
JUDGMENT DISMISSING THE CLASS ACTION PURSUANT TO SLUSA</u>**

**HUSCH BLACKWELL SANDERS LLP**

Jeffrey J. Kalinowski, #3510
Richard H. Kuhlman, #47509
Adam S. Hochschild, #498790
720 Olive Street, 24th Floor
St. Louis, MO 63101
(314) 345-6000 (Tel)
(314) 345-6060 (Fax)
E-mail: jeff.kalinowski@huschblackwell.com
*Attorneys for Defendants*

Of Counsel:
**MORGAN, LEWIS & BOCKIUS LLP**
Kevin T. Rover
Brian A. Herman
101 Park Avenue
New York, NY 10178
(212) 309-6000 (Tel.)
(212) 309-6001 (Fax)

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT OF THE GROUNDS FOR DISMISSAL ................................ 1

I.      BACKGROUND AND PROCEDURAL HISTORY ........................................................ 4

     A.      The Petition Alleges That Defendants Violated State Law by Receiving
        "Revenue Sharing" Payments from Certain "Preferred" Mutual Fund
        Companies ................................................................................................................ 4

     B.      The First Removal ................................................................................................... 6

     C.      The Second Removal ............................................................................................... 7

     D.      The State Court Proceedings Following the Second Removal ............................... 8

     E.      Defendants Timely Removed When Plaintiffs Declared For the First Time,
        Through Their Damages Expert, That They Seek $118 Million in
        Damages for Brokerage Commissions Paid by Mutual Funds to
        Defendants During the Class Period .................................................................... 10

     F.      Shortly After Removal, Plaintiffs Provided Answers to Interrogatories
        Confirming That They Seek $118 Million of Commissions as Damages .......... 10

II.     ARGUMENT ............................................................................................................... 11

     A.      Removal of the Class Action Was Timely Under 28 U.S.C. § 1446 ................... 11

        1.      At the Expert Deposition, Plaintiffs Asserted a New and Un-Pled
            Claim For $118 Million in Damages Based Entirely On
            Commissions Paid to A.G. Edwards by Dozens of Mutual Funds In
            Connection With the Purchase or Sale of Securities ............................... 11

        2.      Plaintiffs' Interrogatory Answers Also Assert Plaintiffs' Entirely
            New Claim for $118 Million in Damages Based on Commissions
            Paid to A.G. Edwards As Described at the Expert Deposition ................ 16

        3.      Removal is Not Barred By the Previous Removals ................................. 18

     B.      The Class Action, With Plaintiffs' New Claim for $118 Million in
        Commission Damages, Satisfies All of the Requirements for SLUSA
        Removal and Preclusion, and Therefore the Class Action Must Be
        Dismissed in Its Entirety ...................................................................................... 19

        1.      SLUSA Provides for the Removal and Immediate Dismissal of
            State Court Class Actions That Satisfy the Elements of SLUSA ........... 19

        2.      Standard for Motion for Judgment ......................................................... 21

        3.      This Action is a Covered Class Action, Brought Under State Law,
            Alleging Omissions .............................................................................. 21

**TABLE OF CONTENTS**
(continued)

Page

4.  Plaintiffs' New Claim for $118 Million in Damages Based Entirely on Commissions Paid to A.G. Edwards by Dozens of Mutual Funds Satisfies SLUSA's "In Connection With" Requirement.............. 23

5.  Because the Four Elements of SLUSA Are Satisfied, the Class Action is Precluded and the Entire Action Must Be Dismissed ............. 26

III.  CONCLUSION................................................................................................ 28

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Akin v. Ashland Chem. Co.*, 156 F.3d 1030 (10th Cir. 1998) .............................11

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) .............................21

*Atencio v. Smith Barney, CitiGroup, Inc.*, No. 04 Civ. 5653, 2005 U.S. Dist. LEXIS 1526 (S.D.N.Y. Feb. 2, 2005)...............................................20,22,26

*Behlen v. Merrill Lynch*, 311 F.3d 1087 (11th Cir. 2002) ...........................20,25

*Benson v. SI Handling Systems, Inc.*, 188 F.3d 780 (7th Cir. 1999)..................19

*Beckett v. Mellon Investor Servs., LLC*, No. C06-5245, 2006 WL 3249189 (W.D. Wash. Nov. 8, 2006) .............................................................25

*Boyce v. AIM Mgmt. Grp., Inc.*, No. H-04-2587, 2006 U.S. Dist. LEXIS 71062 (S.D. Tex. Sep. 29, 2006)..............................................................25

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...............................21

*Cinicolo v. Morgan Stanley Dean Witter & Co.*, No. 01 Civ. 6940, 2004 U.S. Dist. LEXIS 24896 (S.D.N.Y. Dec. 9, 2004)..................................................25

*Connolly v. Aetna U.S. Healthcare, Inc.*, 286 F. Supp. 2d 391 (D.N.J. 2003) .................11

*Dudek v. Prudential Securities, Inc.*, 295 F.3d 875 (8th Cir. 2002) ................................20

*Felton v. Morgan Stanley*, 429 F. Supp. 2d 684 (S.D.N.Y. 2006)....................................21

*Green v. Ameritrade, Inc.,* 279 F.3d 590 (8th Cir. 2002) ..................................21

*Green v. R.J. Reynolds Tobacco Co.*, No. H-99-2579, 2000 U.S. Dist. LEXIS 16293 (S.D. Tex. Aug. 17, 2000)...............................................................18

*Gregoy v. Rogers*, 974 F.2d 1006 (8th Cir. 1992) ...........................21

*Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072 (10th Cir. 1999)...........................11

*In re Blackrock Mutual Funds Fee Litig.*, No. 04 Civ. 164, 2006 U.S. Dist. LEXIS 13846 (W.D. Pa. 2006)..................................................................25

*In re Dreyfus Mutual Fund Fee Litig.*, 428 F. Supp. 2d 342 (W.D. Pa. 2005).................26

# TABLE OF AUTHORITIES
(continued)

**Page**

*In re Edward Jones Holders Litig.*, 453 F. Supp. 2d 1210 (C.D. Cal. 2006) ...............22,26

*In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451 (D.N.J. 2005) .................22,25

*In re Franklin Mut. Funds Fee Litig.*, 478 F. Supp. 2d 677 (D.N.J. 2007) .................20,26

*In re Lord Abbett Mutual Funds Fee Litig.*, 385 F. Supp. 2d 471 (D.N.J. 2005) .............26

*In re Lord Abbett Mutual Funds Fee Litig.*, 463 F. Supp. 2d 505 (D.N.J. 2006) .......passim

*In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579
(S.D.N.Y. 2006) ......................................................................22,26

*Kircher v. Putnam Funds Trust*, 547 U.S. 633, 126 S.Ct. 2145 (2006)....................passim

*Korsinsky v. Salomon Smith Barney, Inc.*, No. 01-Civ-6085, 2002 U.S. Dist.
LEXIS 259 (S.D.N.Y. Jan. 10, 2002) ..........................................................22

*Kutten v. Bank of America*, 530 F.3d 669 (8th Cir. 2008) ...................................9

*Kutten v. Bank of America*, No. 06-0937, 2007 U.S. Dist. LEXIS 63897 (E.D.
Mo. Aug. 29, 2007).............................................................................20,26,27

*McCullagh v. Merrill Lynch & Co.*, No. 01 Civ 7322, 2002 WL 362774
(S.D.N.Y. Mar. 6, 2002) ......................................................................25

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 126 S.Ct.
1503 (2006)......................................................................................passim

*Newby v. Enron*, 338 F.3d 467 (5th Cir. 2003)...............................................20

*O'Bryan v. Chandler*, 496 F.2d 403 (10th Cir. 1974) .......................................19

*Prof. Mgmt. Assocs., Inc. v. KPMG LLP*, 335 F.3d 800 (8th Cir. 2003) ...........................21

*Ray v. CitiGroup Global Markets, Inc.*, No. 03-C-3157, 2005 U.S. Dist. LEXIS
24419 (N.D. Ill. Oct. 18, 2005)...................................................................1

*Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294 (3d Cir. 2005) ....................passim

*SEC v. Zandford*, 535 U.S. 813, 122 S. Ct. 1899 (2002)....................................23

## TABLE OF AUTHORITIES
(continued)

**Page**

*Shaw v. Charles Schwab & Co.*, Fed. Sec. L. Rep. (CCH) ¶ 92,413 ................................25

*Siepel v. Bank of America*, 526 F.3d 1122 (8th Cir. 2008) .........................................*passim*

*Siepel v. Bank of America*, No. 05-2393, 2006 U.S. Dist. LEXIS 93602 (E.D. Mo. Dec. 27, 2006) ................................................................................................20,26,27

*Sofonia v. Principal Life Ins. Co.*, 465 F.3d 873 (8th Cir. 2006) ..............................9,20,21

*Suddith v. Equitable Life Assurance Soc.*, No. 07-0436, 2007 U.S. Dist. LEXIS 63174 (S.D. Ala. Aug. 27, 2007) ..............................................................................19

*Surgical Synergies, Inc. v. Genesee Assoc., Inc.*, 432 F.3d 870 (8th Cir. 2005) ..............21

*S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489 (5th Cir. 1996) ..................................11,19

## FEDERAL STATUTES

15 U.S.C. § 77r(b)(2) ......................................................................................................22

15 U.S.C. § 78bb(f)(1) .................................................................................................*passim*

15 U.S.C. § 78bb(f)(2) ..................................................................................................2,6

15 U.S.C. § 78bb(f)(5)(B) ..............................................................................................22

15 U.S.C. § 78bb(f)(5)(E) ..............................................................................................22

15 U.S.C. § 80(a)-51 ......................................................................................................22

28 U.S.C. § 1446(b) ....................................................................................................3,8,11

SLUSA, Pub. L. No. 105-353, 112 Stat. 3227 ................................................................19

## MISCELLANEOUS

*Black's Law Dictionary* 886 (8th Ed. 2004) ...................................................................23

S. Rep. No. 104-98 at 4-7 (1995) ...................................................................................19

http://www.sec.gov/answers/mutfund.htm .......................................................................19

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| ELEANOR BACHMAN, Individually and On Behalf of All Others Similarly Situated, et al. | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Cause No. 4:09-cv-00057** |
| | ) | |
| A.G. EDWARDS, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT DISMISSING THE CLASS ACTION PURSUANT TO SLUSA

This memorandum is submitted by Defendants A.G. Edwards, Inc. and A.G. Edwards & Sons, Inc. (collectively, "A.G. Edwards" or "Defendants") in support of Defendants' Motion for Judgment Dismissing the Class Action pursuant to the preclusion provision of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). 15 U.S.C. § 78bb(f)(1) *et seq.*[1]

## PRELIMINARY STATEMENT OF THE GROUNDS FOR DISMISSAL

On January 9, 2009, Defendants timely removed this case pursuant to SLUSA [doc. #1]. Defendants now ask this Court to dismiss this action based on the preclusion provision of SLUSA.

The two central questions before the Court are whether removal was timely; and, if so, whether the "in connection with" element of SLUSA is satisfied, mandating dismissal. As this memorandum shows, the answer to both questions is plainly "yes," and therefore the class action should be dismissed.

---

[1] Since Defendants have answered the Petition, this motion is submitted pursuant to Fed. R. Civ. P. 12(c) or, in the alternative, Fed. R. Civ. P. 56. *See, e.g., Ray v. CitiGroup Global Markets, Inc.,* No. 03-C-3157, 2005 U.S. Dist. Lexis 24419 at *18 (N.D. Ill. Oct. 18, 2005) (granting summary judgment under SLUSA), *aff'd on other grounds,* 482 F.3d 991 (7th Cir. 2007). In support of this motion, Defendants submit a Statement of Undisputed Facts and declarations in support thereof.

SLUSA has two key provisions that work in tandem:  a "preclusion" provision and a "removal" provision.[2]  The preclusion provision provides for the immediate dismissal of a (i) covered class action; (ii) based on state law; (iii) alleging omissions (or misrepresentations); (iv) "in connection with" the purchase or sale of securities.  15 U.S.C. § 78bb(f)(1).  The removal provision provides for removal to federal court of any covered class action brought in state court, thereby allowing class action defendants sued in state court the right to have a federal court determine whether the class action is precluded by SLUSA.  15 U.S.C. § 78bb(f)(2).

On December 11, 2008, 29 days before Defendants filed the Notice of Removal in this Court, Defendants deposed Plaintiffs' damages expert.  In that deposition, Plaintiffs declared, for the first time, that they are seeking more than $118 million in damages in the form of commissions paid to Defendants during the five-year class period by mutual funds for executing purchases or sales of securities on behalf of the mutual funds.  Plaintiffs' claim for damages arising from these commissions is entirely new – the Petition does not contain any claims, allegations or even references to such commissions – and materially alters and expands the nature and scope of Plaintiffs' damages claim which, until December 11, 2008, had sought to recover "revenue sharing" payments as damages.

Late in the day on January 9, 2009, after Defendants filed the Notice of Removal, Plaintiffs answered interrogatories propounded by Defendants concerning damages.  Plaintiffs' answers unambiguously confirmed their intention – as stated in the testimony of Plaintiffs' damages expert 29 days earlier – to pursue the new and un-pled claim for damages based on commissions paid to Defendants by mutual funds in connection with purchases or sales of securities by the mutual funds.  Also, Plaintiffs' interrogatory answers confirmed the damages

---

[2] *See generally Kircher v. Putnam Funds Trust*, 547 U.S. 633, 126 S.Ct. 2145 (2006).

expert's testimony that the $118 million of commissions was in addition to the $134 million of "revenue sharing" payments also claimed as damages by Plaintiffs.

Removal pursuant to SLUSA is governed by 28 U.S.C. §1446(b), which provides that a defendant may remove a case within 30 days after receipt of an amended pleading, motion, order or *other paper* from which it may be first ascertained that the case is one which is or has become removable. Plaintiffs' damages expert's deposition constitutes an "other paper" for purposes of § 1446(b). That deposition marks the time from which it was first ascertainable that the case is removable under SLUSA, because Plaintiffs' are seeking to recover commissions paid in connection with the purchase or sale of securities by mutual funds; therefore, Defendants' removal was timely.

As discussed above, SLUSA precludes any (i) "covered class action"; (ii) based on state law; (iii) alleging omissions (or misrepresentations); (iv) "in connection with" the purchase or sale of securities. This Court has already concluded in its earlier decisions that the first two elements of SLUSA are satisfied, and the Petition and prior statements of Plaintiffs' counsel to this Court clearly demonstrate that Plaintiffs have alleged omissions, thereby satisfying the third element. Because Plaintiffs' new claim for $118 million damages in the form of commissions paid to Defendants in connection with the purchase or sale of securities by mutual funds clearly satisfies the "in connection with" element, the final element of SLUSA is satisfied and the class action must be dismissed.

This action has been removed and remanded twice before. However, the prior removals do not bar this removal, which is based on new grounds that did not exist at the time of the prior removals. No court has ever considered Plaintiffs' newly stated damages claim for commissions paid. Plaintiffs' claim for $118 million in commissions, which was first asserted in the expert's deposition, provides the basis for this timely removal. Plaintiffs' newly asserted claim for

commissions also provides a basis for dismissal of the action because all of the elements of SLUSA are plainly satisfied.

Finally, it is no answer to say, as Plaintiffs may in opposing this motion, that the Court may simply dismiss the new claim for damages based on commissions. Under SLUSA, Plaintiffs' state law claims may not be pursued in a state or federal court class action. As this memorandum explains, *infra*, **SLUSA requires** that the "action" (*i.e.*, the entire lawsuit) must be dismissed in these circumstances.

## I.    BACKGROUND AND PROCEDURAL HISTORY

### A.    The Petition Alleges That Defendants Violated State Law by Receiving "Revenue Sharing" Payments from Certain "Preferred" Mutual Fund Companies

On April 13, 2005, Plaintiffs commenced a class action alleging state law claims against the Defendants entitled *Eleanor Bachman and Karol B. McClintock vs. A.G. Edwards, Inc. and A.G. Edwards & Sons, Inc.*, Case No. 252-1266 (the "Class Action"), in the Circuit Court of St. Louis City, Missouri (the "Circuit Court"). (Statement of Undisputed Facts in Support of Motion for Judgment Dismissing Class Action (hereafter, "SUF"), ¶ 1). In the Petition, Plaintiffs allege that Defendants breached fiduciary duties and were unjustly enriched when they accepted "**revenue sharing**," a specific type of allegedly "undisclosed" payment made by certain "preferred" mutual funds to A.G. Edwards. (SUF, ¶ 2). The Petition seeks to recover as damages those "revenue sharing" payments. (SUF, ¶ 3). According to the Petition:

> 2. This action arises from Defendants' **secretly** collecting millions and millions of dollars in **undisclosed and improper kickbacks paid to the Defendants by certain preferred mutual** fund families. These **secret** kickbacks provided **undisclosed** and improper compensation to the Defendants, while **the preferred funds received increased visibility in the Defendants' extensive mutual fund distribution network.**
>
> *   *   *

4

4. **Revenue sharing** is a device through which **mutual fund companies kickback a portion of their profits to the brokers**. The **revenue sharing profits, or kickbacks, at issue here were paid quarterly by the preferred mutual funds or at other regular intervals** during the time that Defendants' clients had shares of the funds. Defendants have collected tens of millions of dollars in **revenue sharing** from these preferred mutual fund companies.

(SUF, ¶ 4). (emphasis added).

The Petition alleges that the "revenue sharing" payments that Plaintiffs seek to recover as their damages have the following attributes:

- They are "undisclosed" and "secret kickbacks" of a "portion of their [the "preferred" mutual fund companies'] profits." (SUF, ¶ 5A).

- They are paid by certain "preferred mutual fund families" in exchange for "increased visibility in the Defendants' extensive mutual fund distribution network." (SUF, ¶ 5B).[3]

- They are paid as part of "pay to stay" arrangements between Defendants and the "preferred" mutual fund companies. According to the Petition, Defendants have agreements that allow them to sell mutual funds offered by more than one hundred mutual fund companies. "Nevertheless, a significant number of mutual funds held by [Defendants'] clients are those funds who paid to stay, *e.g.*, the preferred funds who paid Defendants kickbacks in exchange for the maintenance of preferred fund shares in the accounts of A.G. Edwards' clients." (SUF, ¶ 5C). The "undisclosed payments" by the "preferred" mutual funds "provided Defendants with a secret incentive to support the continued holding of those investments for as long as possible, regardless of changes in circumstances that would otherwise cause a truly objective broker to recommend that the clients sell such shares." (SUF, ¶ 5C).

- They are paid "quarterly by the preferred mutual fund companies or at other regular intervals." (SUF, ¶ 5D).

The Class Action was brought on behalf of persons "who maintained an account with Defendants in which any of the Defendants' preferred mutual funds were held during the Class

---

[3] The Petition identifies five "preferred" mutual fund companies. (SUF, ¶ 5B).

Period."  (SUF, ¶ 7).  According to the Petition, "[t]his case solely involves claims that relate" to

"Defendants' holding of their clients' interests in mutual funds."  (SUF, ¶ 8).

     **B.**     <u>**The First Removal**</u>

     On May 13, 2005, Defendants removed the Class Action from the Circuit Court to this

Court pursuant to SLUSA, which provides for removal to federal district court of certain class

actions that are precluded by SLUSA and therefore must be dismissed.  (SUF, ¶ 11).

     SLUSA's removal provision provides as follows:

> Any covered class action brought in any State court involving a
> covered security, as set forth in paragraph (1), shall be removable
> to the Federal district court for the district in which the action is
> pending, and shall be subject to paragraph (1).

15 U.S.C. § 78bb(f)(2).  This provision incorporates by reference SLUSA's preclusion provision,

which provides that state law class actions that satisfy the requirements of SLUSA may not be

maintained in either state or federal court:

> No covered class action based upon the statutory or common law
> of any State or subdivision thereof may be maintained in any State
> or Federal court by any private party alleging — (A) an untrue
> statement or omission of a material fact in connection with the
> purchase or sale of a covered security; or (B) that the defendant
> used or employed any manipulative or deceptive device or
> contrivance in connection with the purchase or sale of a covered
> security.

15 U.S.C. § 78bb(f)(1).

     After removal of the Class Action, Plaintiffs moved before this Court to remand the Class

Action to the Circuit Court.  (SUF, ¶ 12).  Defendants cross-moved to dismiss the Class Action

pursuant to SLUSA.  (SUF, ¶ 13).  Plaintiffs' counsel stressed to this Court, in oral argument,

that the omissions alleged in the Petition are critical to their case:

> **[I]f a secret, undisclosed profit is being made by the fiduciary**
> **based on a client transaction or client assets, that provides the**
> **basis for recovery.**

The allegation that the kickbacks were kept secret does exist, and that's an allegation of nondisclosure, but the essential purpose of that allegation is because it shows that the clients never agreed with broker to – that the broker could take and keep the profit. If they don't agree, the broker has to give the profit back under the Enriquez decision and Missouri state law. It was kept secret. **So one principal purpose of alleging that these payments were secret is to show that the clients never acquiesced, never agreed. It was an undisclosed secret profit.**

(SUF, ¶ 14) (emphasis added). However, Plaintiffs argued principally that the case should be remanded because SLUSA did not apply to the "Holders' Claims" asserted by Plaintiffs. (SUF, ¶ 15).

On September 26, 2005, this Court remanded this Class Action to the Circuit Court on the grounds that the "in connection with" element of SLUSA was not satisfied. (SUF, ¶ 16).[4]

### C.   The Second Removal

On March 21, 2006, the Supreme Court, in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 126 S.Ct. 1503 (2006), issued a decision interpreting the "in connection with" element of SLUSA. The Court held that state law class action claims raised by "holders" of securities (similar to the claims pled in the Petition) are precluded by SLUSA. *Dabit*, 547 U.S. at 87. The Court also called for "broad construction" of the phrase "in connection with," stating that "a narrow reading of the statue would undercut the effectiveness" of SLUSA and the Private Securities Litigation Reform Act (the "PSLRA"). *Dabit*, 547 U.S. at 86.

On April 19, 2006, in light of *Dabit,* Defendants filed a second notice of removal pursuant to SLUSA and the case was assigned to this Court. (SUF, ¶ 17). Plaintiffs moved to

---

[4] On October 21, 2005, Defendants appealed the First Federal Order to the United States Court of Appeals for the Eighth Circuit, Appeal No. 05-3921. Defendants also moved the Circuit Court to dismiss or stay the Class Action pending the appeal of the First Federal Order to the Eighth Circuit. The Circuit Court denied Defendants' motion, and on June 28, 2006, Defendants moved to voluntarily dismiss the appeal of the First Federal Order in light of *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 126 S.Ct. 2145 (2006). On July 6, 2006, the Eighth Circuit granted that motion.

remand the Class Action to the Circuit Court and Defendants cross-moved to dismiss the Class Action pursuant to SLUSA.  (SUF, ¶ 18).

On November 7, 2006, this Court issued a Memorandum and Order (the "Second Federal Order") stating that "the outcome of the original removal and remand **was** likely incorrect in light of the Supreme Court's decision in *Dabit*."  (SUF, ¶ 19) (emphasis added).  Nonetheless, this Court concluded that the second removal was not timely because (i) removal pursuant to SLUSA is subject to the time limitations set forth in 28 U.S.C. § 1446(b); and (ii) the Supreme Court's decision in *Dabit* was not an "order or other paper" for purposes of 28 U.S.C. § 1446(b), which would open a 30-day window for removal.  (SUF, ¶ 20).

D.    <u>The State Court Proceedings Following the Second Removal</u>

On December 22, 2006, Defendants moved to dismiss the Class Action in the Circuit Court on several grounds, including SLUSA.  (SUF, ¶ 21).  Plaintiffs argued that SLUSA and *Dabit* should not apply because the Petition did not specifically allege "**fraud** in connection with" a purchase or sale, and that "[w]hile Defendants may not have **disclosed** the kickbacks they received from various mutual fund families…**Plaintiffs' claims in no way rest on or require proof of such facts**."  (SUF, ¶ 22) (emphasis added).  Plaintiffs' assertion that their claims do not "rest on or require" omissions directly contradicts statements by Plaintiffs' counsel to this Court that omissions are a key element of the case.  (SUF, ¶¶ 14, 22).  Put simply, Plaintiffs told this Court that the alleged omissions "provide[d] the basis for recovery" but told the Circuit Court that the same allegations were "surplusage" to be "disregarded."  (SUF, ¶ 14, 22).

On July 27, 2007, the Hon. Angela T. Quigless issued an Order denying the motion to dismiss.  (SUF, ¶ 24).  Judge Quigless conceded that Plaintiffs' claims met SLUSA's "in connection with" requirement, finding that "there appears to be little real doubt that in the

aftermath of the U.S. Supreme Court's holding in *Dabit*, and as Judge Webber explicitly acknowledged in his second remand order, the claims here at issue probably do meet the 'in connection with' the purchase or sale of securities element of SLUSA." (SUF, ¶ 25). And, with respect to the omissions alleged in the Petition, the Circuit Court brushed aside Plaintiffs' "surplusage" claim and found that the allegations in the Petition "do, at least incidentally, involve an omission of what might in other contexts be deemed a 'material' fact." (SUF, ¶ 26).

Yet, Judge Quigless determined that SLUSA did not apply to the Class Action by holding that the omissions alleged in the Petition did not "rise to the level of an 'omission of material fact' within the legislatively intended meaning of SLUSA, an enactment which appears to this Court to be aimed at conduct that is **seriously fraudulent in nature**." (SUF, ¶ 27) (emphasis added). The Circuit Court's view that Congress only intended SLUSA to apply to conduct that is "seriously fraudulent in nature" directly conflicts with *Dabit*, which "presum[ed] that Congress envisioned a broad construction" of SLUSA (*Dabit*, 547 U.S. at 86) and the post-*Dabit* application of SLUSA by the Eighth Circuit. *See Siepel v. Bank of America*, 526 F.3d 1122, 1127 (8th Cir. 2008) (rejecting plaintiffs' argument that "non-disclosure was not 'in connection with' the purchase of the securities," and dismissing claims of unjust enrichment and breach of fiduciary duty); *Kutten v. Bank of America*, 530 F.3d 669, 671 (8th Cir. 2008) (state law claims precluded notwithstanding plaintiffs' attempts to distinguish between "failing to disclose" and omitting a material fact); *Sofonia v. Principal Life Ins. Co.*, 465 F.3d 873, 879-880 (8th Cir. 2006) (state law fraud, breach of fiduciary duty and unjust enrichment claims precluded).

On July 10, 2008, the Circuit Court granted Plaintiffs' motion to certify a nationwide class. (SUF, ¶ 28).

**E.**   **Defendants Timely Removed When Plaintiffs Declared For the First Time, Through Their Damages Expert, That They Seek $118 Million in Damages for Brokerage Commissions Paid by Mutual Funds to Defendants During the Class Period**

On June 11, 2008, Plaintiffs designated Joan Warning as an expert to provide testimony "relate[d] to damage calculations." (SUF, ¶ 29). On agreement of the parties, the deposition of Ms. Warning was scheduled for December 11, 2008. (SUF, ¶ 30).

On December 10, 2008, the day before the deposition, Plaintiffs' counsel delivered to Defendants' counsel by email "two schedules prepared by Joan Warning about which she intends to testify" ("Expert's Damages Schedules," also marked at the deposition of Ms. Warning as exhibits G and H) (SUF, ¶ 31). On December 11, 2008, Defendants deposed Ms. Warning. (SUF, ¶ 32). The transcript of the deposition (the "Warning Transcript") and certain exhibits marked at the deposition (the "Expert Deposition Exhibits," specifically exhibits D, E and F) are referred to herein as the "Expert Deposition."

As detailed below, Plaintiffs asserted, through the Expert Deposition, a new and un-pled claim for $118 million in damages entirely based on commissions paid by mutual funds to Defendants in connection with the execution of orders by the mutual funds to purchase and sell securities.

Consequently, on January 9, 2009, less than 30 days after the Expert Deposition, Defendants filed timely notice of removal.

**F.**   **Shortly After Removal, Plaintiffs Provided Answers to Interrogatories Confirming That They Seek $118 Million of Commissions as Damages**

Late in the day on January 9, 2009, the same day Defendants filed the Notice of Removal, Plaintiffs served their answers ("Plaintiffs' Interrogatory Answers") to Defendants' Second Set of Interrogatories ("Defendants' Interrogatories"), which asked questions about damages. (SUF, ¶ 46). Just like the Expert Deposition, Plaintiffs' Interrogatory Answers

confirm that Plaintiffs are adding a new and un-pled claim for $118 million in damages based on commissions paid to Defendants by mutual funds in connection with the purchase or sale of securities by the mutual funds. (SUF, ¶ 46).

As Defendants now show, this Class Action is precluded under SLUSA and the Court should dismiss this action in its entirety.

## II.    ARGUMENT

### A.    Removal of the Class Action Was Timely Under 28 U.S.C. § 1446

Removal pursuant to SLUSA is governed by 28 U.S.C. § 1446(b), which provides in pertinent part:

> If the case stated by the initial pleading is not removable, **a notice of removal may be filed within thirty days after receipt by the defendant**, through service or otherwise, of a copy of an amended pleading, motion, order or **other paper** from which it may first be ascertained that the case is one which is or has become removable.

(Emphasis added). The Expert Deposition, which marks the time from which it was first ascertainable that the case is removable under SLUSA, because Plaintiffs are seeking to recover commissions paid by mutual funds in connection with the purchase or sale of securities by mutual funds, constitutes an "other paper" for purposes of 28 U.S.C. § 1446(b).[5] Therefore, removal is timely.

> **1.    At the Expert Deposition, Plaintiffs Asserted a New and Un-Pled Claim For $118 Million in Damages Based Entirely On Commissions Paid to A.G. Edwards by Dozens of Mutual Funds In Connection With the Purchase or Sale of Securities**

---

[5] *See, e.g., Connolly v. Aetna U.S. Healthcare, Inc.*, 286 F. Supp. 2d 391, 399 (D.N.J. 2003); *see generally Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1078-1079 (10th Cir. 1999) (deposition is an "other paper"); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996) ("The deposition constitutes a new paper or event that changed the facts regarding the removableness of the case."). Plaintiffs' Interrogatory Answers, which were served the day Defendants filed the Notice of Removal, also constitute an "other paper" for purposes of § 1446(b). *See, e.g., Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1036 (10th Cir. 1998).

In their Petition, dated April 13, 2005, Plaintiffs seek to recover as damages the "revenue sharing" payments made by certain "preferred" mutual funds to defendants.  (SUF, ¶ 2).   The words "commissions" and "directed brokerage" do not appear anywhere in the Petition, while the phrase "revenue sharing" appears five times.  (SUF, ¶¶ 9-10).

On December 11, 2008, Defendants deposed Ms. Warning.  (SUF, ¶ 32).  Through Ms. Warning's expert testimony, Plaintiffs stated – for the first time – that in addition to seeking damages based on "revenue sharing," Plaintiffs are *also* seeking an entirely new form of damages.  These newly claimed damages consist of $118 million in additional damages that are not "revenue sharing" payments (as alleged in the Petition).  Rather, these damages are commissions paid by more than two dozen mutual fund companies to Defendants during the class period in connection with Defendants' executing purchases or sales of securities for the securities portfolios of the mutual funds.  (SUF, ¶¶ 33-42).

Stated simply, Plaintiffs, through Ms. Warning's expert testimony, declared a material expansion of the scope and nature of the Class Action and the damages sought through the claims alleged in the Petition.  (SUF, ¶¶ 33-42).  Thus, the Expert Deposition provides an entirely new ground for the application of SLUSA to this case through the assertion of the new damages claim for commissions paid to A.G. Edwards by mutual funds.  (SUF, ¶¶ 33-42).

By way of background, a mutual fund pools money from many investors and invests the money in stocks, bonds, short-term money-market instruments or other securities.  The investment portfolios of mutual funds are managed by separate entities known as "investment advisers" that are registered with the U.S. Securities and Exchange Commission.  *See* http://www.sec.gov/answers/mutfund.htm (last visited Jan. 6, 2008).  A mutual fund portfolio (*i.e.*, the securities owned by the mutual fund) is not static.  Rather the investment adviser causes the mutual fund to purchase and sell securities as market conditions may dictate.  These

purchases or sales are executed through various broker-dealers which earn commissions for effecting the purchases or sales of securities for the investment portfolio of the mutual fund.

There is no statutory definition of "directed brokerage." Plaintiffs have used the following definition in their third-party deposition subpoenas served on numerous mutual funds:

> DIRECTED BROKERAGE means any contract, agreement, understanding, custom, business practice or arrangement by which YOU [the mutual fund] direct or directed to A.G. EDWARDS YOUR [the mutual fund's] portfolio securities transactions by selecting A.G. EDWARDS to execute trades in securities held or to be acquired by YOU [the mutual fund], or to receive any remuneration, including but not limited to any commission, mark-up, mark-down, or other fee (or portion thereof), received or to be received in connection with YOUR [the mutual fund's] portfolio securities transaction effected through any other broker or dealer.

(SUF, ¶ 47).

Ms. Warning, Plaintiffs' damages expert, testified in part as follows:

- She was retained by Plaintiffs to "[c]ompute damages" in this class action. (SUF, ¶ 33A).

- Specifically, she was instructed to "compute the interest in regard to the revenue sharing schedules prepared by A.G. Edwards. . . " (SUF, ¶ 33B).

- The documents she relied upon to complete her assignment (which she referred to as "revenue sharing schedules prepared by A.G. Edwards") were marked as Exhibits D, E and F at Ms. Warning's deposition. (SUF, ¶ 33C).

- To complete her assignment, Ms. Warning combined, for each year during the class period (a) the total amount of "revenue sharing" on Expert Deposition Exhibit D with (b) the total amount of "directed brokerage" on Expert Deposition Exhibit D, and applied certain interest formulas to the combined amount to arrive at a total damages amount with interest. (SUF, ¶ 33D). The results of those calculations were recorded on the Expert's Damages Schedules. (SUF, ¶ 33D).

Expert Deposition Exhibit D (the basis for the Expert's Damages Schedules) is a spreadsheet that was produced by Defendants in discovery in this matter. (SUF, ¶ 34). It is a

two page spreadsheet captioned "**Combined Mutual Fund Revenue Sharing – Directed Brokerage** – 2nd Qtr 2000-2nd Qtr 2005." (SUF, ¶ 34) (emphasis added).

The spreadsheet contains, *inter alia,* columns with headings entitled "Total Revenue Sharing," "Total Directed Brokerage" and "Grand Total." (SUF, ¶ 35). The "directed brokerage" information set forth on this spreadsheet and totaled under the column "Total Directed Brokerage" represents commissions paid to Defendants by mutual fund companies in connection with Defendants' execution of purchases or sales of securities for the investment portfolios of the mutual funds during the relevant time period. (SUF, ¶ 35).

Notwithstanding that the commissions are listed as "directed brokerage" on Expert Deposition Exhibit D, Ms. Warning combined these commissions with the "revenue sharing" amounts on the spreadsheet for purposes of her damages calculations. (SUF, ¶ 36). The following is a comparison of information from (i) Expert Deposition Exhibit D (prepared by the Defendants) and (ii) one of the Expert's Damages Schedules (prepared by Ms. Warning):

| (Data From Expert Deposition Exhibit D, Which Was Prepared by Defendants) | | |
|---|---|---|
| Total Revenue Sharing | Total Directed Brokerage | Grand Total |
| 134,689,604 | 118,103,057 | 252,792,661 |

| (Data From the Expert's Damages Schedules, Which Were Prepared by the Expert) | |
|---|---|
| Year | Revenue Sharing |
| 2000 (last 6 mo) | 39,504,567 |
| 2001 | 58,505,770 |
| 2002 | 52,234,012 |
| 2003 | 45,304,117 |
| 2004 | 39,819,786 |
| 2005 (Jan- April) | 17,424,409 |
| | 252,792,661 |

(SUF, ¶ 37). This "Grand Total" (*i.e.*, the sum of the "Total Revenue Sharing" and "Total Directed Brokerage") from Expert Deposition Exhibit D is precisely the same amount as that listed on the Expert's Damages Schedules for "Revenue Sharing." (SUF, ¶¶ 37-38). Ms. Warning confirmed this at her deposition, agreeing that "those numbers match." (SUF, ¶ 39).

Ms. Warning further testified that she originally prepared drafts of the Expert's Damages Schedules which separated out damages calculations for the "revenue sharing" and "directed

brokerage" figures set forth on Expert Deposition Exhibit D; that she provided the drafts to

Plaintiffs' Counsel; and **that Plaintiffs' Counsel instructed her to combine the "revenue**

**sharing" and "directed brokerage" figures under the single heading "Revenue Sharing."**

(SUF, ¶ 40).

The claim for commissions is entirely new. (SUF, ¶¶ 33-42). The commissions paid in

connection with directed brokerage – which are broken out under the "Directed Brokerage"

headings on Expert Deposition Exhibit D but included under "Revenue Sharing" headings in the

Expert Damages Schedules – do not share any of the attributes of the "revenue sharing" alleged

in the Petition. (SUF, ¶¶ 33-42, 2-10). According to the Petition, "revenue sharing" is allegedly

paid by a limited number of "preferred" mutual fund companies on quarterly or other regular

basis as a "kickback" of a portion of the "preferred" mutual funds profits, and as part of a "pay to

stay" arrangement that provided a "secret incentive" to Defendants to support their clients

continued holding "preferred" mutual funds. (SUF, ¶¶ 2-10).

In contrast to "revenue sharing" payments, commissions are fees paid to a broker-dealer

by a mutual fund in return for the broker-dealer executing the purchase or sale of a security for

the mutual fund. (SUF, ¶ 42). Also, commissions by their very nature are not paid on a

quarterly or other regular basis, but rather on a frequent and irregular basis (*i.e.*, whenever a

mutual fund places orders to buy or sell securities for the mutual fund's portfolio). (SUF, ¶ 42).

These commissions were paid by dozens of mutual fund companies as compensation in

connection with the execution of countless purchases or sales of securities. (SUF, ¶ 42). As

further conclusive proof that claims for commissions paid in connection with directed brokerage

are new, in March 2008, Eleanor Bachman and Karol McClintock, the two class representatives,

testified that they were unaware what "directed brokerage" is. (SUF, ¶ 43). When asked

whether "directed brokerage" was at issue in this matter, Mrs. Bachman answered, "I don't know." (SUF, ¶ 43).

Based on the Expert Deposition, and in particular Ms. Warning's testimony concerning her inclusion of the "directed brokerage" amounts from Expert Deposition Exhibit D in the Expert's Damages Schedules, it is now ascertainable, for the first time, that **Plaintiffs are seeking as damages $118,103,057 in commissions paid to Defendants by mutual funds in connection with directed brokerage**. (SUF, ¶¶ 33-45). This is in addition to the $134,689,604 in damages based on "revenue sharing" also listed on Expert Deposition Exhibit D. (SUF, ¶ 45). Under SLUSA , Defendants are not required to litigate the addition of this new claim in state court. SLUSA provides Defendants the right to remove the class action to this Court for a determination whether the elements of SLUSA are satisfied, thus warranting dismissal of the class action.

### 2. Plaintiffs' Interrogatory Answers Also Assert Plaintiffs' Entirely New Claim for $118 Million in Damages Based on Commissions Paid to A.G. Edwards As Described at the Expert Deposition

Late in the day on January 9, 2009, the same day Defendants filed the Notice of Removal, Plaintiffs served Plaintiffs' Interrogatory Answers in response to Defendants' Interrogatories. (SUF, ¶ 46). As with the Expert Deposition, Plaintiffs' Interrogatory Answers reveal Plaintiffs' addition of the new and un-pled claim for $118 million in damages based on commissions paid to Defendants by mutual funds in connection with the purchase or sale of securities by the mutual funds. (SUF, ¶¶ 46-55).

Defendants' Interrogatories defined several terms used in the interrogatories. First, Defendants specifically tied "damages" to the Petition:

> DAMAGES means and refers to "'compensatory and other damages' as that term is used in paragraph B of the Prayer for Relief section of the Petition in this matter."

(SUF, ¶ 48).

Second, in their interrogatory definitions, Defendants specifically defined "commissions" and copied, almost verbatim, the definition of Directed Brokerage used by Plaintiffs in their discovery subpoenas served on numerous mutual funds:

> COMMISSIONS means a "**fee paid** to a broker-dealer by a mutual fund **in return for executing the purchase or sale of a security.**"

> \*      \*      \*

> DIRECTED BROKERAGE means "any contract, agreement, understanding, custom, business practice or arrangement by which a **FUND FAMILY directs or directed to A.G. EDWARDS portfolio securities transactions by selecting A.G. Edwards to execute trades in securities held or to be acquired by a FUND FAMILY, or to receive any remuneration**, including but not limited to any **commission**, mark-up, mark-down, or other fee (or portion thereof), received or to be received **in connection with a FUND FAMILY portfolio securities** transaction effected through any other broker or dealer."[6]

(SUF, ¶¶ 47, 49) (emphasis added).

Defendants' Interrogatory 3 asked Plaintiffs to state "the total amount of **DAMAGES** that you claim were caused by Defendants' alleged breach of fiduciary duty and Defendants' alleged unjust enrichment" (*i.e.*, the two Counts set forth in the Petition).  (SUF, ¶ 50).  On January 9, 2009, Plaintiffs answered:

> ANSWER TO INTERROGATORY 3:  Plaintiffs object to this interrogatory on the ground that it misstates Plaintiffs' theory of the case and the related law.  Subject to that objection and without waiving it, **Plaintiffs and the class are seeking recovery of at least $252,792,000** plus interest. . .

(SUF, ¶ 50) (emphasis added).   Plaintiffs copied the "at least $252,792,000" of DAMAGES from Expert Deposition Exhibit D which, as explained above, includes *both* "revenue sharing"

---

[6] Defendants do not agree with – and do not adopt – this definition.

*and* commissions paid to Defendants by mutual fund companies in connection with executing purchases or sales of securities by the mutual funds. (SUF, ¶ 51).

Plaintiffs further confirmed that they are pursuing a new and un-pled claim for damages based on $118 million in commissions paid to Defendants in connection with DIRECTED BROKERAGE in their answer to Defendants' Interrogatory 4, which asked Plaintiffs to:

> State whether the amount of DAMAGES you seek includes COMMISSIONS paid by one or more FUND FAMILIES in connection with DIRECTED BROKERAGE.

(SUF, ¶¶ 52-55). Plaintiffs provided the following answer, which states in relevant part as follows:

> ANSWER TO INTERROGATORY 4: **Plaintiffs and the class are seeking** the return of monies A.G. Edwards received from mutual funds during the class period…which were paid to A.G. Edwards based, at least in part, upon the amount of assets class members held on account at A.G. Edwards, including **monies paid to A.G. Edwards as a result of Directed Brokerage**.

(SUF, ¶ 53) (emphasis added).

The only "monies paid to A.G. Edwards as a result of Directed Brokerage" are commissions paid by mutual funds in connection with the mutual funds' purchases or sales of the securities. (SUF, ¶ 54). Therefore, Plaintiffs' interrogatory answer is a clear statement by Plaintiffs that they seek to recover as damages commissions paid to Defendants in connection with the purchase or sale of securities by mutual funds. (SUF, ¶¶ 53-55).

**3. Removal Is Not Barred By the Previous Removals**

The fact that Defendants unsuccessfully removed this action in the past does not preclude this removal. Because this removal is based entirely on Plaintiffs' newly asserted claim for $118 million in commissions, it is proper, and the prior remands do not prohibit this removal.[7]

**B.    The Class Action, With Plaintiffs' New Claim for $118 Million in Commission Damages, Satisfies All of the Requirements for SLUSA Removal and Preclusion, and Therefore the Class Action Must Be Dismissed in Its Entirety**

### 1.    SLUSA Provides for the Removal and Immediate Dismissal of State Court Class Actions That Satisfy the Elements of SLUSA

In 1995, Congress passed the PSLRA to curb perceived abuse of the class action system, including nuisance filings and frivolous and burdensome securities litigation. *See* S. Rep. No. 104-98 at 4-7 (1995); *Dabit*, 547 U.S. at 81. However, it soon became evident, that class action plaintiffs were circumventing the application of the PSLRA, with its heightened pleading requirements and procedural safeguards, by filing class actions in state court. Less than three years after the PSLRA was passed, Congress enacted SLUSA "in order to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the [PSLRA]." Securities Litigation Uniform Standards Act of 1998, Pub. L. No. 105-353 § 2, 112 Stat. 3227. *See Dabit*, 547 U.S. at 82; *see also Siepel v. Bank of America*, 526 F.3d 1122, 1126-1127 (8th Cir. 2008). Congress specifically designed SLUSA to "prevent plaintiffs from

---

[7] *See, e.g., Benson v. SI Handling Systems, Inc.*, 188 F.3d 780, 782-783 (7th Cir. 1999) (successive removal proper); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 493 (5th Cir. 1996) ("[A] remand order that expressly addresses the theory of federal jurisdiction does not have res judicata effect on subsequent removals based on the same theory, provided that the subsequent removal petitions allege a different factual basis for seeking removal."); *O'Bryan v. Chandler,* 496 F.2d 403, 410 (10th Cir. 1974); *Green v. R.J. Reynolds Tobacco Co.*, No. H-99-2579, 2000 U.S. Dist. LEXIS 16293 at *28-29 (S.D. Tex. Aug. 17, 2000), *aff'd*, 2000 U.S. Dist. LEXIS 16114 (S.D. Tex. Sept. 28, 2000); *Sudduth v. Equitable Life Assurance Soc.*, No. 07-0436, 2007 U.S. Dist. LEXIS 63174 at *11-12 (S.D. Ala. Aug. 27, 2007).

seeking to evade the protections that federal law provides against abuse litigation by filing suit in State, rather than federal, courts."[8]

A class action is precluded under SLUSA, and dismissal is compelled, if the following four requirements are met: (i) the suit is a "covered" class action; (ii) the claims are based on state law; (iii) the defendant is alleged to have misrepresented or omitted a material fact (or to have used or employed any manipulative or deceptive device or contrivance); and (iv) the defendant is alleged to have engaged in the conduct described above "in connection with the purchase or sale of a covered security."  15 U.S.C. § 78bb(f)(1).  *See Sofonia*, 465 F.3d at 876.

Though SLUSA is sometimes referred to as a law of preemption, the Supreme Court has made clear that SLUSA is a law of preclusion.  *See Kircher*, 547 U.S. at 637 n.1.  In other words, SLUSA does not displace state law with federal law.  Instead, it makes certain state law claims "nonactionable" in a class action in either state or federal court.  *Id.*

The fact that SLUSA precludes the "action" is outcome determinative here.  Stated simply, SLUSA's preclusion of the "action" means that if any part of the Class Action satisfies all of the elements of SLUSA, the Court cannot dismiss only the affected claim or ignore it. Rather, **the entire Class Action must be dismissed**.  *See Kutten v. Bank of America*, No. 06-0937, 2007 U.S. Dist. LEXIS 63897 at *23 (E.D. Mo. Aug. 29, 2007) ("SLUSA mandates dismissal of an entire class action when at least one of the class action claims is preempted."), *aff'd,* 530 F.3d 669 (8th Cir. 2008); *Siepel v. Bank of America*, No. 05-2393, 2006 U.S. Dist. LEXIS 93602 at *36 n. 11 (E.D. Mo. Dec. 27, 2006) ("SLUSA preemption mandates dismissal of the entire class action – not just individual claims), *aff'd,* 526 F.3d 1122 (8th Cir. 2008); *In re*

---

[8] *Dudek v. Prudential Securities, Inc.*, 295 F.3d 875, 877 (8th Cir. 2002) (citation omitted); *see Newby v. Enron*, 338 F.3d 467, 472 (5th Cir. 2003) (The PSLRA and SLUSA "were enacted to combat abuses in class action securities cases, in particular those caused by the filing of class actions in state court."); *Sofonia v. Principal Life Ins. Co.*, 465 F.3d 873, 876 (8th Cir. 2006); *Atencio v. Smith Barney, CitiGroup, Inc.*, No. 04 Civ. 5653, 2005 U.S. Dist. LEXIS 1526 at *7 (S.D.N.Y. Feb. 2, 2005); *Behlen v. Merrill Lynch*, 311 F.3d 1087, 1090-1091 (11th Cir. 2002).

*Franklin Mutual Funds Fee Litig.*, 478 F. Supp. 2d 677, 682 (D.N.J. 2007); *In re Lord Abbett Mutual Funds Fee Litig.*, 463 F. Supp. 2d 505, 512-513 (D.N.J. Dec. 4, 2006).[9]

### 2. Standard for Motion for Judgment

A court must grant a motion for summary judgment pursuant to Rule 56 if the evidence on file "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant bears the burden of making this showing. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party opposing the motion "must set forth facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986). Although the evidence must be viewed in the light most favorable to the nonmovant, mere speculation is not enough to avoid summary judgment. *Gregoy v. Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992). A court applies a similar standard in deciding a motion for judgment on the pleadings pursuant to Rule 12(c) except the court in such instance does not consider any papers beyond the pleadings. *See* Fed. R. Civ. P. 12(c) and 12(d); *Surgical Synergies, Inc. v. Genesee Assoc., Inc.*, 432 F.3d 870, 873 (8th Cir. 2005).

### 3. This Action is a Covered Class Action, Brought Under State Law, Alleging Omissions

In determining whether SLUSA applies, the Court must ask whether the claims can "reasonably be read" as falling within SLUSA's preclusive scope. *See Prof. Mgmt. Assocs., Inc. v. KPMG LLP*, 335 F.3d 800, 803 (8th Cir. 2003) *quoting Green v. Ameritrade, Inc.,* 279 F.3d 590, 598 (8th Cir. 2002); *Sofonia*, 465 F.3d at 877. The Court "must look beyond the face" of the claims and should not be fooled by "artful pleading" or "a securities fraud wolf dressed up…[in] sheep's clothing." *Felton v. Morgan Stanley*, 429 F. Supp. 2d 684, 692-693 (S.D.N.Y.

---

[9] An individual plaintiff (or small group of individuals) is still free to pursue individual claims against the Defendants in state court. *Kircher,* 547 U.S. at 637 n.1.

2006) (citations omitted); *Korsinsky v. Salomon Smith Barney Inc.*, No. 01-Civ-6085, 2002 U.S. Dist. LEXIS 259 at *5-6 (S.D.N.Y. Jan. 10, 2002) (citations omitted).[10]

Applying these standards, the Class Action is clearly precluded. The Court has previously determined that this is a "covered class action" as that term is defined in SLUSA[11] based on the law of the State of Missouri. (SUF, ¶ 19).[12]

Further, the "omissions" element of SLUSA is unquestionably satisfied by the plain language of the Petition, which alleges in relevant part as follows:

- **"This action arises from** Defendants' **secretly collecting** millions and millions of dollars in **undisclosed** and improper **kickbacks**…" (SUF, ¶ 6A) (emphasis added);

- "[T]rue **material facts** . . . **were concealed** throughout the Class Period…" (SUF, ¶ 6B) (emphasis added);

- "**In breach of their fiduciary duties**, **Defendants** acted in their own self interest and **failed to disclose to Plaintiffs and the Class that they secretly profited** from their client's investments in the preferred mutual

---

[10]  *See also In re Edward Jones Holders Litig.*, 453 F. Supp. 2d 1210, 1215 (C.D. Cal. 2006) (mutual fund revenue sharing class action precluded even though "precise allegations are 'artfully' absent"); *Atencio*, 2005 U.S. Dist. LEXIS 1526 at *16 (mutual fund revenue sharing class action precluded even though "the complaint…scrupulously avoids" reference to purchase or sales); *see generally Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294, 305 (3d Cir. 2005) (determining whether a reasonable reading of the complaint reveals allegations within SLUSA's purview); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 604 (S.D.N.Y. 2006) (dismissing breach of fiduciary duty claims and finding attempt to evade SLUSA unavailing); *In re Franklin Mut. Funds Fee Litig.*, 388 F.Supp. 2d 451, 473 (D.N.J. 2005) ("It is well-established that an artfully drafted complaint cannot circumvent SLUSA preemption.").

[11]  SLUSA defines "covered class actions," *inter alia*, as  "(i) any single lawsuit in which-- (I) damages are sought on behalf of more than 50 persons or prospective class members, and questions of law or fact common to those persons or members of the prospective class, without reference to issues of individualized reliance on an alleged misstatement or omission, predominate over any questions affecting only individual persons or members; or (II) one or more named parties seek to recover damages on a representative basis on behalf of themselves and other unnamed parties similarly situated, and questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members." 15 U.S.C. 78bb(f)(5)(B).

[12]  In addition, both (a) the mutual funds that allegedly paid A.G. Edwards "secret" and "undisclosed" "kickbacks" and (b) the securities that make up the portfolios of the mutual funds, which are purchased and sold by the mutual funds through broker-dealers such as the Defendants, are "covered securities" as that term is defined in SLUSA. "The term 'covered security' means a security that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 18(b) of the Securities Act of 1933, at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred ...." 15 U.S.C. § 78bb(f)(5)(E). Section 18(b) of the 1933 Act in turn defines "covered security" to include securities traded on a national exchange (such as the securities owned in the mutual fund portfolios) and securities (such as mutual funds) issued by an investment company that is registered with the Securities and Exchange Commission pursuant to the Investment Company Act of 1940, 15 U.S.C. § 80a-51, *et seq. See* 15 U.S.C. § 77r(b)(2).

fund families **by receiving undisclosed payments** based on their client's investments held in trust." (SUF, ¶ 6C) (emphasis added);

- **"At no time did Defendants** or the preferred fund companies **adequately disclose** the existence and/or nature of the pay to stay kickbacks or the conflicts of interest arising therefrom." (SUF, ¶ 6D) (emphasis added);

- "**Defendants had a duty to disclose** conflicts of interests. **Defendants had a duty to disclose** their self-interest every time they received a kickback payment, which occurred periodically during the time clients held their shares. **At no time did the Defendants**, or the preferred fund companies, **adequately disclose** the existence and/or nature of the pay to stay kickbacks or of the conflicts of interest. **Thus, Defendants have breached their duty to disclose** self-interest." (SUF, ¶ 6E) (emphasis added).

Additionally, the Petition uses the word "secret" (or some derivation thereof) 13 times and the word "undisclosed" 10 times. (SUF, ¶ 10). Moreover, the Petition uses the word "kickback," which refers to a secret agreement, 19 times.[13] (SUF, ¶ 10).

Finally, as set forth more fully *supra*, during oral argument before this Court in connection with the first removal, counsel for Plaintiffs stressed that the omissions alleged in the Petition are critical to this case: "if a secret, undisclosed profit is being made by the fiduciary based on a client transaction or client assets, that provides the basis for recovery." (SUF, ¶ 14). Plainly, the unambiguous words in the Petition and the statements of counsel demonstrate that Plaintiffs have alleged omissions.

### 4. Plaintiffs' New Claim for $118 Million in Damages Based Entirely on Commissions Paid to A.G. Edwards by Dozens of Mutual Funds Satisfies SLUSA's "In Connection With" Requirement

The phrase, "in connection with" must be given "broad construction" and must be "construed flexibly, not technically or restrictively." *Siepel v. Bank of America,* 526 F.3d 1122, 1127 (8th Cir. 2008) (citing *Dabit,* 547 U.S. at 86 and *SEC v. Zandford*, 535 U.S. 813, 19, 122 S.

---

[13] *See Black's Law Dictionary* 886 (8th Ed. 2004), defining kickback as a "return of a portion of a monetary sum received, esp. as a result of coercion or a secret agreement."

Ct. 1899 (2002)).  "Under *Dabit*, however, 'it is enough that the fraud alleged 'coincide' with a securities transaction – whether by plaintiff or by someone else.'"  *Id.* citing *Dabit,* 547 U.S. at 85.

The new claim for $118 million in damages based on commissions paid to Defendants in connection with "directed brokerage" does more than "coincide" with a securities transaction.  Commissions are an inherent part of a securities transaction.  As described above, Defendants execute orders by mutual funds to purchase and sell securities in the mutual fund portfolios, and Defendants are paid commissions by the mutual fund companies in connection with such purchases or sales.  Defendants are not paid a commission unless there is a purchase or sale.  As a result, the "in connection with" element of SLUSA is satisfied.

Because the "connection" between a commission and a purchase or sale of a security is clear, courts routinely conclude that claims to recover "commissions" paid to a broker-dealer satisfy the "in connection with" element of SLUSA.  For example, in *Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294, 303 (3d Cir. 2005), plaintiff alleged that defendants' providing of allegedly tainted research advice violated state law and constituted a breach of the service contract between the defendant broker-dealer and its customers.  The Third Circuit concluded that Plaintiffs' claims were precluded by SLUSA based in part on the fact that plaintiff's claim for damages encompassed "trading fees and commissions - charges incurred only in connection

with the purchase or sale of securities." *Id.* at 303.[14]  Similarly, other courts have concluded that state law class actions seeking disgorgement of commissions are precluded by SLUSA.[15]

As the Expert Deposition and Plaintiffs' Interrogatory Answers make clear, Plaintiffs are now seeking as damages $118 million in commissions paid to Defendants by more than two dozen mutual funds.  Because a purchase or sale of a security is a prerequisite for the payment of a commission, the "in connection with" element of SLUSA is clearly satisfied.

Numerous courts have concluded that state law class actions alleging improper "directed brokerage" arrangements are precluded by SLUSA and must therefore be dismissed.  *See, e.g.*, *Boyce v. AIM Mgmt. Grp.*, Inc., No. H-04-2587, 2006 U.S. Dist. LEXIS 71062, at *22-23 (S.D. Tex. Sep. 29, 2006) (state law claims concerning "directed brokerage" are a "permutation[] of fraud that 'coincided' with securities transactions"); *In re Blackrock Mutual Funds Fee Litig.*, No. 04 Civ. 164, 2006 U.S. Dist. LEXIS 13846 at *24 (W.D. Pa. 2006) (Plaintiffs alleged that mutual funds made improper payments in the form of "directed brokerage," "revenue sharing" and "soft dollars"  in exchange for aggressive marketing; state law claims precluded by SLUSA); *In re Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 472-473 (D.N.J. 2005) (Plaintiffs alleged that defendants paid brokers to steer investors into Franklin mutual funds using "directed

---

[14] *See also Behlen*, 311 F.3d at 1094 (11th Cir. 2002) (allegation that defendants omitted facts so as to generate "excess fees and commissions" were "in connection with" the sale of securities); *Shaw v. Charles Schwab & Co.*, Fed. Sec. L. Rep. (CCH) ¶ 92,413 at 92,090-92091 ("commissions are charged….as a result of specific securities purchases or sales"); *Beckett v. Mellon Investor Servs., LLC*, No. C06-5245, 2006 WL 3249189 at *4 (W.D. Wash. Nov. 8, 2006) (claims for charging undisclosed transaction and service fee satisfies the "in connection with" requirement.").

[15] *See Cinicolo v. Morgan Stanley Dean Witter & Co.*, No. 01 Civ. 6940, 2004 U.S. Dist. LEXIS 24896 at *16 (S.D.N.Y. Dec. 9, 2004) (state law class action seeking "disgorgement of commissions" precluded); *McCullagh v. Merrill Lynch & Co.*, No. 01 Civ. 7322, 2002 WL 362774 at *4 (S.D.N.Y. Mar. 6, 2002) (SLUSA's "in connection with" requirement satisfied in an action seeking disgorgement of allegedly excessive commissions).

brokerage," "excessive commissions," and "revenue-sharing"; state law claims precluded by SLUSA).[16]

### 5. Because the Four Elements of SLUSA Are Satisfied, the Class Action Is Precluded and the Entire Action Must Be Dismissed

Because all of the elements of SLUSA are satisfied, under the plain and unambiguous language of SLUSA, the entire "action" must be dismissed. This is because "SLUSA mandates dismissal of an entire class action when at least one of the class action claims is preempted." *Kutten*, 2007 U.S. Dist. LEXIS 63897 at *23, *aff'd*, 530 F.3d 669, 670 (8th Cir. 2008); *Siepel*, 2006 U.S. Dist. LEXIS 93602 at *36 n. 11, *aff'd*, 526 F.3d 1122, 1127 (8th Cir. 2008); *In re Franklin Mutual Funds Fee Litig.*, 478 F. Supp. 2d 677, 682 (D.N.J. 2007); *In re Lord Abbett Mutual Funds*, 463 F. Supp. 2d at 512-513 ("SLUSA preempts entire class actions, and not mere claims in a complaint.")

This principle was recently explained by the United States District Court for the District of New Jersey in *In re Lord Abbett Mutual Funds*, 463 F. Supp. 2d 505 (D.N.J. 2006). There, plaintiffs commenced a class action against several affiliates of the Lord Abbett mutual funds, alleging that Lord Abbett improperly compensated brokers excessively as an incentive to steer new investors into the Lord Abbett mutual funds. Plaintiffs' initial class action complaint raised federal claims under the Investment Company Act of 1940 (the "ICA") and the Investment Advisers Act of 1940, and state law claims for unjust enrichment and breach of fiduciary duty. On defendants' motion, the court dismissed the state law claims as precluded by SLUSA;

---

[16] *See also In re Salomon Smith Barney Mutual Funds Fee Litig.*, 441 F. Supp. 2d 579, 604 (S.D.N.Y. 2006) ("*Dabit's* very broad interpretation of SLUSA includes such claims within its 'pre-emptive sweep.'"); *In re Lord Abbett Mutual Funds Fee Litig.*, 385 F. Supp. 2d 471, 484 (D.N.J. 2005) (dismissing "shelf space" and "directed brokerage" claims under SLUSA), *vacated on other grounds*, 463 F. Supp. 2d 505 (D.N.J. 2006); *In re Dreyfus Mutual Fund Fee Litig.*, 428 F. Supp. 2d 342, 355-56 (W.D. Pa. 2005) (same). These decisions are in accord with pre- and post-*Dabit* decisions dismissing revenue sharing class actions which did not contain allegations of directed brokerage. *See In re Edward Jones Holders Litig.*, 453 F. Supp. 2d 1210, 1217 (C.D. Cal. 2006) ("Although this action has been pending for several years, the simple fact remains that, after *Dabit*, neither this Court nor any state court has jurisdiction to hear it."); *Atencio*, 2005 U.S. Dist. LEXIS 1526 at *18 (state law claims alleging defendants paid undisclosed "retention kickbacks" by certain mutual fund families precluded).

dismissed the federal claims; and granted plaintiffs leave to re-plead derivatively certain of their ICA claims. Plaintiffs then filed an amended complaint purporting to assert derivative claims under the ICA. At Defendants' request, the court allowed briefing as to whether the court's earlier determination that SLUSA precluded the state law claims required dismissal of the entire action.

The court determined that, because plaintiffs employed the class action to assert their claims, once the court found that the state law claims were precluded by SLUSA, the court was "required to dismiss the entire class action, including [the ICA counts]." *Id.* at 508. The court determined that this result is compelled by the plain text of SLUSA, which precludes "actions," rather than just "claims," "counts" or "allegations." *Id.* at 509. Further, the court compared SLUSA to its "companion," the PSLRA, and noted that while the PSLRA uses the term "claim," SLUSA in contrast "refers *only* to 'actions.'" *Id.* at 512 (emphasis in original). The court reasoned that "[i]f Congress intended SLUSA to preempt only claims, counts or allegations in a complaint, it presumably would have employed narrower terms than 'action.'" *Id.* at 511. Finally, the court relied on *Rowinski,* where the Third Circuit suggested "that if any claims in the covered class action are preempted, the entire action must be dismissed." 398 F.3d at 305.

*Lord Abbett* has twice been applied in this District. In *Siepel,* the Court determined that plaintiffs' state law claims were precluded and, relying on *Lord Abbett*, determined that plaintiffs' federal claims must also fail. "SLUSA preemption mandates dismissal of the entire class action – not just individual claims." 2006 U.S. Dist. LEXIS 93602 at *36 fn. 11. Similarly, in *Kutten,* the Court determined that all of class action claims were precluded under SLUSA: "SLUSA mandates dismissal of an entire class action when at least one of the class action claims is preempted." *Kutten,* 2007 U.S. Dist. LEXIS 63897 at *23.

Because all of the elements of SLUSA are satisfied with respect to Plaintiffs' newly asserted claim for commissions, the entire "action" must be dismissed. Further, given that SLUSA precludes a plaintiff from prosecuting otherwise proper federal claims (*see In re Lord Abbett Mutual Funds*, 463 F. Supp. 2d 505 (D.N.J. 2006)), then, *a fortiori*, it should preclude Plaintiffs from prosecuting state law claims here.

Moreover, this Court previously recognized in the Second Federal Order that, in light of *Dabit*, the "holders" claims asserted in the Petition are precluded by SLUSA. Accordingly, since the Petition's "revenue sharing" claims are precluded and since the removal was timely, *Dabit* provides an additional grounds for dismissal of the entire action.

## III.    CONCLUSION

For all of the foregoing reasons, the Court should enter an order granting judgment to Defendants dismissing the Class Action as precluded by SLUSA.

Respectfully submitted,

**HUSCH BLACKWELL SANDERS LLP**

By: /s/ Jeffrey J. Kalinowski
Jeffrey J. Kalinowski, #3510
Richard H. Kuhlman, #47509
Adam S. Hochschild, #498790
720 Olive Street, 24th Floor
St. Louis, MO 63101
(314) 345-6000 (Tel)
(314) 345-6060 (Fax)
E-mail: jeff.kalinowski@huschblackwell.com
*Attorneys for Defendants*

Of Counsel:
**MORGAN, LEWIS & BOCKIUS LLP**
Kevin T. Rover
Brian A. Herman
101 Park Avenue
New York, NY 10178
(212) 309-6000 (Tel.)
(212) 309-6001 (Fax)

SLD-1481391

28

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of January, 2009, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

Robert D. Blitz
Blitz, Bardgett & Deutsch, LC
120 South Central Ave.
Suite 750
St. Louis, MO 63105
*Counsel for Plaintiffs*

/s/ Jeffrey J. Kalinowski

SLD-1481391

29