IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ELEANOR BACHMAN, Individually and On Behalf of All Others Similarly Situated, and KAROL B. MCCLINTOCK and KAROL B. MCCLINTOCK, IRA, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> A.G. EDWARDS, INC. and A.G. EDWARDS & SONS, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Cause No. 4:09-cv-00057 |

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS
IN SUPPORT OF MOTION FOR JUDGMENT DISMISSING
THE CLASS ACTION PURSUANT TO SLUSA**

Defendants A.G. Edwards, Inc. and A.G. Edwards & Sons, Inc. ("Defendants") hereby submit this Statement of Undisputed Facts in support of their Motion for Judgment Dismissing the Class Action Pursuant to SLUSA:

▪ **The Petition**

1. On April 13, 2005, Plaintiffs commenced a class action alleging state law claims against the Defendants entitled *Eleanor* Bachman *and Karol B. McClintock vs. A.G. Edwards, Inc. and A.G. Edwards & Sons, Inc*., Case No. 252-1266 (the "Class Action"), in the Circuit Court of St. Louis City, Missouri (the "Circuit Court"). (Exhibit A to Declaration of Jeffrey J. Kalinowski submitted herewith (hereafter, "Kalinowski Declaration")).[1]

---

[1] Exhibits to the Kalinowski Declaration are hereafter referred to as "Kalinowski Ex. ___" (*e.g.*, "Kalinowski Ex. A"), followed by paragraph, page, and/or line number(s) thereof as applicable.

2. In the Petition, Plaintiffs allege that Defendants breached fiduciary duties and were unjustly enriched when they accepted "revenue sharing," a specific type of allegedly "undisclosed" payment made by certain "preferred" mutual funds to A.G. Edwards. (Kalinowski Ex. A, ¶¶ 1-4, 26, 29, 30, 35-50).

3. The Petition seeks to recover as damages those "revenue sharing" payments. (Kalinowski Ex. A, pp. 14-15).

4. According to the Petition:

> 2. This action arises from Defendants' secretly collecting millions and millions of dollars in undisclosed and improper kickbacks paid to the Defendants by certain preferred mutual fund families. These secret kickbacks provided undisclosed and improper compensation to the Defendants, while the preferred funds received increased visibility in the Defendants' extensive mutual fund distribution network.
>
> * * *
>
> 4. Revenue sharing is a device through which mutual fund companies kickback a portion of their profits to the brokers. The revenue sharing profits, or kickbacks, at issue here were paid quarterly by the preferred mutual funds or at other regular intervals during the time that Defendants' clients had shares of the funds. Defendants have collected tens of millions of dollars in revenue sharing from these preferred mutual fund companies.

(Kalinowski Ex. A, ¶¶ 2, 4).

5. The Petition contains the following allegations regarding the "revenue sharing" payments that Plaintiffs seek to recover as their damages:

    A. They are "undisclosed" and "secret kickbacks" of a "portion of their [the "preferred" mutual fund companies'] profits." (Kalinowski Ex. A, ¶¶ 2-4.)

      B.    They are paid by certain "preferred mutual fund families" in exchange for "increased visibility in the Defendants' extensive mutual fund distribution network." (Kalinowski Ex. A, ¶¶ 1, 2).[2]

      C.    They are paid as part of "pay to stay" arrangements between Defendants and the "preferred" mutual fund companies. According to the Petition, Defendants have agreements that allow them to sell mutual funds offered by more than one hundred mutual fund companies. "Nevertheless, a significant number of mutual funds held by [Defendants'] clients are those funds who paid to stay, *e.g.*, the preferred funds who paid Defendants kickbacks in exchange for the maintenance of preferred fund shares in the accounts of A.G. Edwards' clients." (Kalinowski Ex. A, ¶ 26; *see also* ¶ 29). The "undisclosed payments" by the "preferred" mutual funds "provided Defendants with a secret incentive to support the continued holding of those investments for as long as possible, regardless of changes in circumstances that would otherwise cause a truly objective broker to recommend that the clients sell such shares." (Kalinowski Ex. A, ¶ 30).

      D.    They are paid "quarterly by the preferred mutual fund companies or at other regular intervals." (Kalinowski Ex. A, ¶ 4; *see also* ¶¶ 15, 30).

6.    The Petition also contains the following allegations, each relating to Defendants' alleged failure to disclose the "revenue sharing" payments:

      A.    "This action arises from Defendants' secretly collecting millions and millions of dollars in undisclosed and improper kickbacks…" (Kalinowski Ex. A, ¶ 2).

      B.    "[T]rue material facts . . . were concealed throughout the Class Period…" (Kalinowski Ex. A, ¶ 29).

      C.    "In breach of their fiduciary duties, Defendants acted in their own self interest and failed to disclose to Plaintiffs and the Class that they secretly profited from their client's investments in the preferred mutual fund families by receiving undisclosed payments based on their client's investments held in trust." (Kalinowski Ex. A, ¶ 30).

      D.    "At no time did Defendants or the preferred fund companies adequately disclose the existence and/or nature of the pay to stay kickbacks or the conflicts of interest arising therefrom." (Kalinowski Ex. A, ¶ 32).

      E.    "Defendants had a duty to disclose conflicts of interests. Defendants had a duty to disclose their self-interest every time they received a kickback

---

[2] The Petition identifies five "preferred" mutual fund companies. (Kalinowski Ex. A, ¶ 1).

payment, which occurred periodically during the time clients held their shares. At no time did the Defendants, or the preferred fund companies, adequately disclose the existence and/or nature of the pay to stay kickbacks or of the conflicts of interest. Thus, Defendants have breached their duty to disclose self-interest." (Kalinowski Ex. A, ¶ 42).

7. The Class Action was brought on behalf of persons "who maintained an account with Defendants in which any of the Defendants' preferred mutual funds were held during the class period." (Kalinowski Ex. A., ¶ 17).

8. Further, according to the Petition, "[t]his case solely involves claims that relate" to "Defendants' holding of their clients' interests in mutual funds." (Kalinowski Ex. A, ¶ 16).

9. The words "commissions" and "directed brokerage" do not appear anywhere in the Petition. (Kalinowski Ex. A).

10. In the Petition, the phrase "revenue sharing" appears 5 times, the word "secret" (or some derivation thereof) appears 13 times, the word "undisclosed" appears 10 times, and the word "kickback," which refers to a secret agreement, appears 19 times. (Kalinowski Ex. A).

▪ **The First Removal**

11. On May 13, 2005, Defendants removed the Class Action from the Circuit Court to this Court. The Notice of Removal identified the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") as the basis for removal. (Kalinowski Ex. B, p. 3).

12. After the 2005 removal of the Class Action, Plaintiffs moved before this Court to remand the Class Action to the Circuit Court. (Kalinowski Ex. B, p. 3).

13. Defendants cross-moved to dismiss the Class Action pursuant to SLUSA. (Kalinowski Ex. B, p. 3).

14. Plaintiffs' counsel made the following statements to the Court, in oral argument, regarding the claims in the Petition:

> [I]f a secret, undisclosed profit is being made by the fiduciary based on a client transaction or client assets, that provides the basis for recovery.
>
> The allegation that the kickbacks were kept secret does exist, and that's an allegation of nondisclosure, but the essential purpose of that allegation is because it shows that the clients never agreed with broker to – that the broker could take and keep the profit. If they don't agree, the broker has to give the profit back under the <u>Enriquez</u> decision and Missouri state law. It was kept secret. So one principal purpose of alleging that these payments were secret is to show that the clients never acquiesced, never agreed. It was an undisclosed secret profit.

(Kalinowski Ex. L, pp. 11-12).

15. Plaintiffs argued in their Motion to Remand and Memorandum of Points and Authorities in Support that the case should be remanded because SLUSA did not apply to the "Holders' Claims" asserted by Plaintiffs. (Kalinowski Ex. O, p. 6).

16. On September 26, 2005, this Court remanded this Class Action to the Circuit Court on the grounds that the "in connection with" element of SLUSA was not satisfied. (Kalinowski Ex. B).

- **The Second Removal**

17. On April 19, 2006, Defendants filed a second notice of removal pursuant to SLUSA and the case was assigned to this Court. (Kalinowski Ex. C, p. 2).

18. Plaintiffs moved to remand the Class Action to the Circuit Court and Defendants cross-moved to dismiss the Class Action pursuant to SLUSA. (Kalinowski Ex. C, p. 2).

19. On November 7, 2006, this Court issued a Memorandum and Order (the "Second Federal Order") stating, *inter alia*, that "the outcome of the original removal and remand was likely incorrect in light of the Supreme Court's decision in *Dabit*." (Kalinowski Ex. C, p. 10 ).

20. This Court concluded that the second removal was not timely because (i) removal pursuant to SLUSA is subject to the time limitations set forth in 28 U.S.C. § 1446(b); and (ii) the Supreme Court's decision in *Dabit* was not an "order or other paper" for purposes of 28 U.S.C. § 1446(b), which would open a 30-day window for removal.  (Kalinowski Ex. C, p. 13).

▪ **State Court Proceedings Following Second Removal**

21. On December 22, 2006, Defendants moved to dismiss the Class Action in the Circuit Court on several grounds, including SLUSA.  (Kalinowski Ex. P).

22. Plaintiffs argued, *inter alia*, that SLUSA and *Dabit* should not apply because the Petition did not specifically allege "fraud in connection with" a purchase or sale, and that "[w]hile Defendants may not have disclosed the kickbacks they received from various mutual fund families… Plaintiffs' claims in no way rest on or require proof of such facts."  (Kalinowski Ex. Q, pp. 18-19).

23. Plaintiffs told this Court that omissions "provide[d] the basis for recovery," and told the Circuit Court that the same allegations were "surplusage" to be "disregarded." (Kalinowski Ex. Q, p. 20 n.5).

24. On July 27, 2007, the Hon. Angela T. Quigless issued an Order denying the motion to dismiss.  (Kalinowski Ex. D).

25. Judge Quigless conceded that the Plaintiffs' claims met SLUSA's "in connection with" requirement, finding that "there appears to be little real doubt that in the aftermath of the U.S. Supreme Court's holding in *Dabit*, and as Judge Webber explicitly acknowledged in his second remand order, the claims here at issue probably do meet the 'in connection with' the purchase or sale of securities element of SLUSA." (Kalinowski Ex. D,  p. 9 n. 6).

26. With respect to the omissions alleged in the Petition, the Circuit Court found, *inter alia*, that the allegations in the Petition "do, at least incidentally, involve an omission of what might in other contexts be deemed a 'material' fact." (Kalinowski Ex. D, p. 10 n. 8).

27. Yet, Judge Quigless determined that SLUSA did not apply to the Class Action by holding that the omissions alleged in the Petition did not "rise to the level of an 'omission of material fact' within the legislatively intended meaning of SLUSA, an enactment which appears to this Court to be aimed at conduct that is seriously fraudulent in nature." (Kalinowski Ex. D, p. 10 n. 8).

28. On July 10, 2008, the Circuit Court granted Plaintiffs' motion to certify a nationwide class. (Kalinowski Ex. R).

- **Plaintiffs' Expert's Testimony on December 11, 2008**

29. On June 11, 2008, Plaintiffs designated Joan Warning as an expert to provide testimony "relate[d] to damage calculations." (Kalinowski Ex. S).

30. On agreement of the parties, the deposition of Ms. Warning was scheduled for December 11, 2008. (Kalinowski Ex. F).

31. On December 10, 2008, the day before the deposition, Plaintiffs' Counsel delivered to Defendants' counsel by email "two schedules prepared by Joan Warning about which she intends to testify" ("Expert Damages Schedules," also marked at the deposition of Ms. Warning as exhibits G and H). (Kalinowski Exs. E and G).

32. On December 11, 2008, Defendants deposed Ms. Warning ("Expert Deposition"). (Kalinowski Ex. F).[3] The transcript of the deposition ("Warning Transcript") and certain

---

[3] Defendants have redacted highly confidential information set forth in the Warning Transcript (Kalinowski Ex. F) and Expert Deposition Exhibits D, E and F, collectively, Kalinowski Ex. G. Expert Deposition E corrects an error (not relevant to this motion) found on Expert Deposition D. The documents are the same in all other respects. Defendants have filed with the Court a motion for leave to submit unredacted copies of these materials under seal.

exhibits marked at the deposition (the "Expert Deposition Exhibits," specifically exhibits D, E and F) are referred to herein as the "Expert Deposition."

    33.    Ms. Warning testified in part as follows:

        A.    She was retained by Plaintiffs to "[c]ompute damages" in this class action. (Kalinowski Ex. F, p. 42, lines 3-7; *see also* p. 43, lines 11-14.)

        B.    Specifically, she was instructed to "compute the interest in regard to the revenue sharing schedules prepared by A.G. Edwards. . . " (Kalinowski Ex. F, p. 42, lines 17 – 20; *see also* p. 43, lines 2-6).

        C.    The documents she relied upon to complete her assignment (which she referred to as "revenue sharing schedules prepared by A.G. Edwards") were marked as Exhibits D, E and F at Ms. Warning's deposition. (Kalinowski Ex. F, pp. 42-43, lines 14-10).[4]

        D.    To complete her assignment, Ms. Warning combined, for each year during the class period (a) the total amount of "revenue sharing" on Expert Deposition Exhibit D with (b) the total amount of "directed brokerage" on Expert Deposition Exhibit D, and applied certain interest formulas to the combined amount to arrive at a total damages amount with interest. (Kalinowski Ex. F, pp. 52-55; p. 61 *et seq.*)  The results of those calculations were recorded on the Expert's Damages Schedules. (Kalinowski Ex. H).

    34.    Expert Deposition Exhibit D (the basis for the Expert's Damages Schedules) is a spreadsheet that was produced by Defendants in discovery in this matter.  (Kalinowski Ex. G).  It is a two page spreadsheet captioned "Combined Mutual Fund Revenue Sharing – Directed Brokerage – 2nd Qtr 2000-2nd Qtr 2005."  (Kalinowski Ex. G).

    35.    The spreadsheet contains, *inter alia,* columns with headings entitled "Total Revenue Sharing," "Total Directed Brokerage" and "Grand Total."  (Kalinowski Ex. G, p. 3). The "directed brokerage" information set forth on this spreadsheet and totaled under the column

---

That motion is still pending.  Copies of the Expert's Damages Schedules, marked as Expert Deposition Exhibits G and H, are also attached as Kalinowski Ex. H.  Defendants will provide the Court the remaining exhibits marked at the deposition upon the Court's request.

[4] As set forth *supra*, redacted copies of Expert Deposition Exhibits D, E and F are submitted as Kalinowski Ex. G. Expert Deposition Exhibit E corrects an error on Expert Deposition Exhibit D.

"Total Directed Brokerage" represents commissions paid to Defendants by mutual fund companies in connection with Defendants' execution of purchases or sales of securities for the investment portfolios of the mutual funds during the relevant time period. (Declaration of Thomas Martin submitted herewith (hereafter, "Martin Declaration"), ¶¶ 3-6).

36.     Ms. Warning combined these commissions with the "revenue sharing" amounts on the spreadsheet for purposes of her damages calculations. (Kalinowski Ex. F, p. 54, lines 5-20; Exs. G and E).

37.     The following is a comparison of information from (i) Expert Deposition Exhibit D (prepared by the Defendants) and (ii) one of the Expert's Damages Schedules (prepared by Ms. Warning):

**(Data From Expert Deposition Exhibit D, Which Was Prepared by Defendants)**

| Total Revenue Sharing | Total Directed Brokerage | Grand Total |
|---|---|---|
| 134,689,604 | 118,103,057 | 252,792,661 |

**(Data From the Expert's Damages Schedules, Which Were Prepared by the Expert)**

| Year | Revenue Sharing |
|---|---|
| 2000 (last 6 mo) | 39,504,567 |
| 2001 | 58,505,770 |
| 2002 | 52,234,012 |
| 2003 | 45,304,117 |
| 2004 | 39,819,786 |
| 2005 (Jan- April) | 17,424,409 |
| | 252,792,661 |

(Kalinowski Exs. G and E).

38.     This "Grand Total" (*i.e.*, the sum of the "Total Revenue Sharing" and "Total Directed Brokerage") from Expert Deposition Exhibit D is the same amount as that listed on the Expert's Damages Schedules for "Revenue Sharing." (Kalinowski Exs. G and E).

39.     Ms. Warning confirmed this at her deposition, agreeing that "those numbers match." (Kalinowski Ex. F, p. 54, lines 5-20).

40.     Ms. Warning further testified that she originally prepared drafts of the Expert's Damages Schedules which separated out damages calculations for the "revenue sharing" and

"directed brokerage" figures set forth on Expert Deposition Exhibit D; that she provided the drafts to Plaintiffs' Counsel; and that Plaintiffs' Counsel instructed her to combine the "revenue sharing" and "directed brokerage" figures under the single heading "Revenue Sharing." (Kalinowski Ex. F, pp. 57-60).

41. The commissions paid in connection with directed brokerage – which are broken out under the "Directed Brokerage" headings on Expert Deposition Exhibit D but included under "Revenue Sharing" headings in the Expert Damages Schedules – do not share the attributes of the alleged "revenue sharing" described in the Petition. (Kalinowski Exs. G, E, and A; Martin Declaration, ¶¶ 3-5).

42. Commissions are fees paid to a broker-dealer by a mutual fund in return for the broker-dealer executing the purchase or sale of a security for the mutual fund. Also, commissions by their very nature are not paid on a quarterly or other regular basis, but rather on a frequent and irregular basis (*i.e.*, whenever a mutual fund places orders to buy or sell securities for the mutual fund's portfolio). (Martin Declaration, ¶ 3). The commissions were paid by dozens of mutual fund companies as compensation in connection with the execution of countless purchases or sales of securities.[5]

43. In March 2008, Eleanor Bachman and Karol McClintock, the two class representatives, testified that they were unaware what "directed brokerage" is. When asked whether "directed brokerage" was at issue in this matter, Mrs. Bachman answered, "I don't know." (Kalinowski Ex. J, pp. 54-58; Kalinowski Ex. K, p. 66).

---

[5] Upon entry of an order allowing Defendants to file confidential information under seal, Defendants will provide evidence of the foregoing.

44. At no time before the Expert Deposition had Plaintiffs delineated commissions earned for "directed brokerage," in particular in the amount of $118,103,057 (Kalinowski Ex. F, *e.g.*, p. 54, lines 5-20).

45. Plaintiffs' claimed damages of $118,103,057 in commissions based on "directed brokerage" are in addition to the $134,689,604 in claimed damages based on "revenue sharing" also listed on Expert Deposition Exhibit D. (Kalinowski Ex. G).

- **Plaintiffs' Interrogatory Responses Served on January 9, 2009**

46. On January 9, 2009, Plaintiffs served their answers ("Plaintiffs' Interrogatory Answers") to Defendants' Second Set of Interrogatories ("Defendants' Interrogatories"). (Kalinowski Exs. N and M).

47. Plaintiffs have used the following definition in their third-party deposition subpoenas served on numerous mutual funds:

> DIRECTED BROKERAGE means any contract, agreement, understanding, custom, business practice or arrangement by which YOU [the mutual fund] direct or directed to A.G. EDWARDS YOUR [the mutual fund's] portfolio securities transactions by selecting A.G. EDWARDS to execute trades in securities held or to be acquired by YOU [the mutual fund], or to receive any remuneration, including but not limited to any commission, mark-up, mark-down, or other fee (or portion thereof), received or to be received in connection with YOUR [the mutual fund's] portfolio securities transaction effected through any other broker or dealer.

(Kalinowski Ex. T, p. 2).

48. Defendants' Interrogatories provided the following defined term for "damages":

> DAMAGES means and refers to "'compensatory and other damages' as that term is used in paragraph B of the Prayer for Relief section of the Petition in this matter."

(Kalinowski Ex. M, p. 2).

49. Defendants' Interrogatories provided the following defined terms for "commissions" and "directed brokerage":

> COMMISSIONS means a "fee paid to a broker-dealer by a mutual fund in return for executing the purchase or sale of a security."
>
> \* \* \*
>
> DIRECTED BROKERAGE means "any contract, agreement, understanding, custom, business practice or arrangement by which a FUND FAMILY directs or directed to A.G. EDWARDS portfolio securities transactions by selecting A.G. Edwards to execute trades in securities held or to be acquired by a FUND FAMILY, or to receive any remuneration, including but not limited to any commission, mark-up, mark-down, or other fee (or portion thereof), received or to be received in connection with a FUND FAMILY portfolio securities transaction effected through any other broker or dealer."[6]

(Kalinowski Ex. M, p. 2).

50. Defendants' Interrogatory 3 asked Plaintiffs to state "the total amount of DAMAGES that you claim were caused by Defendants' alleged breach of fiduciary duty and Defendants' alleged unjust enrichment" (*i.e.*, the two Counts set forth in the Petition). (Kalinowski Ex. M, p. 3). On January 9, 2009, Plaintiffs answered:

> ANSWER TO INTERROGATORY 3: Plaintiffs object to this interrogatory on the ground that it misstates Plaintiffs' theory of the case and the related law. Subject to that objection and without waiving it, Plaintiffs and the class are seeking recovery of at least $252,792,000 plus interest. . .

(Kalinowski Ex. N, p. 2).

51. Plaintiffs copied the "at least $252,792,000" of damages from Expert Deposition Exhibit D, which includes both "revenue sharing" and commissions paid to Defendants by

---

[6] Defendants do not agree with – and do not adopt – this definition.

mutual fund companies in connection with executing purchases or sales of securities by the mutual funds. (Kalinowski Ex. N, p. 2, and Ex. G).

      52.      Defendants' Interrogatory 4 asked Plaintiffs to:

> State whether the amount of DAMAGES you seek includes COMMISSIONS paid by one or more FUND FAMILIES in connection with DIRECTED BROKERAGE.

(Kalinowski Ex. M, p. 5).

      53.      Plaintiffs provided the following answer, which states in relevant part as follows:

> ANSWER TO INTERROGATORY 4: Plaintiffs and the class are seeking the return of monies A.G. Edwards received from mutual funds during the class period…which were paid to A.G. Edwards based, at least in part, upon the amount of assets class members held on account at A.G. Edwards, including monies paid to A.G. Edwards as a result of Directed Brokerage.

(Kalinowski Ex. N, p. 2).

      54.      The only "monies paid to A.G. Edwards as a result of Directed Brokerage" are commissions paid by mutual funds in connection with the mutual funds' purchases or sales of the securities. (Kalinowski Ex. M).

      55.      Plaintiffs' answer to Defendant's Interrogatory 4 states that Plaintiffs seek to recover as damages commissions paid to Defendants in connection with the purchase or sale of securities by mutual funds. (Kalinowski Ex. N).

Respectfully submitted,

**HUSCH BLACKWELL SANDERS LLP**

By: /s/ Jeffrey J. Kalinowski
Jeffrey J. Kalinowski, #3510
Richard H. Kuhlman, #47509
Adam S. Hochschild, #498790
720 Olive Street, 24th Floor
St. Louis, MO 63101
(314) 345-6000 (Tel)
(314) 345-6060 (Fax)
E-mail: jeff.kalinowski@huschblackwell.com
*Attorneys for Defendants*

Of Counsel:
**MORGAN, LEWIS & BOCKIUS LLP**
Kevin T. Rover
Brian A. Herman
101 Park Avenue
New York, NY 10178
(212) 309-6000 (Tel.)
(212) 309-6001 (Fax)

## CERTIFICATE OF SERVICE

    I hereby certify that on this 16th day of January, 2009, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

Robert D. Blitz
Blitz, Bardgett & Deutsch, LC
120 South Central Ave.
Suite 750
St. Louis, MO 63105
*Counsel for Plaintiffs*

                                            /s/ Jeffrey J. Kalinowski