```
STATE OF MISSOURI     )
                      )
CITY OF ST. LOUIS     )
```

### MISSOURI CIRCUIT COURT
### TWENTY-SECOND JUDICIAL CIRCUIT
### (City of St. Louis)

```
ELEANOR BACHMAN, Individually )
and on Behalf of All Others   )
Similarly Situated, and KAROL )
B. MCCLINTOCK, IRA, Indivi-   )    Cause No. 22052-01266-02
dually and On Behalf of All   )
Others Similarly Situated,    )    Division No. 20
                              )
          Plaintiffs,         )
                              )
vs.                           )
                              )
A.G. EDWARDS, INC., and       )
A.G. EDWARDS & SONS, INC.,    )
                              )
          Defendants.         )
```

### ORDER

This matter comes before the Court on Defendants' Motion to Dismiss.  Having reviewed the record and considered the parties written and oral arguments, the Court now rules as follows.

### Background

Plaintiffs, on behalf of themselves and all others similarly situated, have filed the instant class action against Defendants.  The putative class consists of all current and former clients of Defendants who have maintained a brokerage account at A.G. Edwards and who held shares of any mutual fund companies offered by any of A.G. Edwards' "preferred" mutual fund families, during a 5-year class period of April 12, 2000

1

through April 12, 2005. Broadly speaking Plaintiffs allege that Defendants received "revenue sharing" fee payments (frequently referred to in Plaintiffs' Petition as "kickbacks"), paid to the Defendants by certain preferred mutual fund companies in exchange for Defendants' clients maintaining preferred fund shares in their A.G. Edwards accounts. Plaintiffs allege Defendants improperly profited from their clients' assets when these "revenue sharing" payments were received by Defendants rather than being given to the clients themselves (i.e. Plaintiffs and the other class members).

Based on these underlying allegations the Petition raises two counts, one count for breach of fiduciary duty and one for unjust enrichment. In Count I Plaintiffs claim that Defendants owed them and their fellow class members certain fiduciary duties, and that Defendants breached those duties by retaining the revenue sharing payments and thereby profiting in the manner they did from their clients' assets. In Count II Plaintiffs claim that Defendants were unjustly enriched by retaining the revenue sharing payments in violation of their fiduciary duties. In both counts, Plaintiffs' prayer for relief is disgorgement of the profits stemming from Defendants' retention of the revenue sharing payments. Although this cause of action was originally filed in this Court, it has now twice been removed to, and then twice remanded back from, the United States District Court.

Following the second remand[1], and as both parties appear to agree, the major issue now facing this Court relative to Defendants' motion to dismiss is whether this cause of action is barred and precluded by certain language in the federal Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. sections 78bb *et seq.*[2]   However, in addition to that primary argument cited as grounds for dismissal, Defendants also urge the cause should be dismissed on the asserted bases that: (1) the action is pre-empted by federal law; (2) even under Missouri law, Plaintiffs fail to state any cognizable cause of action on both counts in their Petition; and (3) Plaintiffs lack standing to prosecute claims on behalf of other class members concerning any preferred mutual fund companies other than the ones that Plaintiffs themselves own shares of.[3]

### Standard of Review

A motion to dismiss for failure to state a claim is solely a test of the adequacy of the plaintiff's petition.   <u>Nazeri v.</u>

---

[1] The second removal and remand came about largely as a result of, and of course in the aftermath of, the United States Supreme Court's ruling in <u>Dabit v. Merrill Lynch, Pierce, Fenner and Smith, Inc.</u>, 126 S. Ct. 1503 (2006).

[2] That question is properly before this Court at this time as a result of the U.S. District Court's decision that the second removal of this case to federal court was time-barred and thus the case had to be remanded.  (See generally, "Memorandum and Order" dated November 7, 2006, by the Hon. E. Richard Webber, in <u>Bachman v. A. G. Edwards & Sons</u>, U. S. Dist Court, Eastern District of Missouri, Eastern Division, Cause No. 4:06CV00659 ERW.)  As the federal court noted therein (at 4-5, n.2), quoting the U. S. Supreme Court:  "Nothing in [SLUSA] gives the federal courts exclusive jurisdiction over preclusion decisions."  <u>Kirchner v. Putnam trust Funds</u>, 126 S. Ct. 2145, 2156 (2006).  Rather, "the state court (an equally competent body) [can] make the preclusion determination."  <u>Id</u>.  Thus, as Judge Webber noted, the remand of this case back to this Court does not prevent this Court from deciding the crucial issue of whether, in light of <u>Dabit</u>, Plaintiffs' cause of action is precluded under SLUSA.

[3] Because the Court believes these latter three arguments are more easily disposed of since the law on them is very clear, whereas the issue of possible preclusion under SLUSA is in some respects more difficult and may therefore warrant closer scrutiny, the Court will address the other arguments first in the substantive discussion portion of this Order.

<u>Missouri Valley College</u>, 860 S.W.2d 303, 306 (Mo. banc 1993). It assumes that all of the plaintiff's averments are true, and liberally grants to the plaintiff all reasonable inferences that may be drawn therefrom. <u>Murphy v. A. A. Mathews, a Division of CRS Group Engineers, Inc.</u>, 841 S.W.2d 671, 672 (Mo. banc 1992). No attempt is made to weigh any facts as to whether they are credible or persuasive; instead, the petition is reviewed simply to see whether the facts alleged meet the elements of a recognized cause of action, *or* of a cause of action "that might be recognized in that case." <u>Nazeri</u>, 860 S.W.2d at 306. Further, when considering the merits of a motion to dismiss courts may, in appropriate instances, disregard or treat as mere surplusage allegations in the petition which are unnecessary to the cause of action. See <u>Jones Holding Company, Inc. v. Walker</u>, 792 S.W.2d 61, 63 (Mo. App. W.D. 1990).

## Discussion

### (1) Does Federal Law Preempt the Field?

Defendants argue, *inter alia*, that federal law preempts Plaintiffs' state law claims. Defendants argue the existence of certain federal regulations (principally SEC Rule 10b-10) demonstrates Congressional intent to wholly occupy the field of securities regulation, and particularly as to the sort of "revenue sharing" claims raised by the instant action. Defendants tacitly acknowledge that Congress has not explicitly

4

preempted state law in this area, but argue that such preemption should be implied from the fact that federal regulation of revenue sharing is relatively comprehensive.

This argument is not convincing.  A very strong presumption exists against implied preemption, and such presumption can only be overcome if Defendants persuasively show that preemption was the "clear and manifest purpose of Congress."  See Medtronic, Inc. v. Lohr, 116 S. Ct. 2240 (1996); CSX Transportation, Inc. v. Easterwood, 113 S. Ct. 1732, 1737 (1993).  Defendants have not shown--persuasively or otherwise--that the federal govern-ment has manifested such a clear intention to preempt the field.[4]

### (2) Have Plaintiffs Stated any Cognizable State law Claims?

Defendants also argue that, aside from any considerations of federal preemption or SLUSA preclusion and even under state law, Plaintiffs have simply failed to state any claim on which relief could be granted in either Count I or Count II.  This line of argument is wholly lacking in merit and warrants little discussion.

Under Missouri law, brokers have fiduciary duties that plainly are implicated by the allegations raised in this action; see Paine Webber, Inc. v. Voorhees, 891 S.W.2d 126, 129-130 (Mo. banc 1995).  Breach of fiduciary duty is a recognized cause of

---

[4] The Court further notes that virtually the identical preemption argument was considered and squarely rejected by The Hon. Michael David of this Court, in an order dated January 6, 2005, in the case of Enriquez v. Edward Jones & Co., Inc., Cause No. 22042-00126A.  While of course not bound by the rulings of another judge of this Court in another similar case, the undersigned trial judge nevertheless can take notice of Judge David's analysis and ruling on this issue in the Edward Jones case, and finds said ruling to be instructive.

action that sounds in tort; see *Zakibe v. Ahrens & McCarron, Inc.*, 28 S.W.3d 373, 381 (Mo. App. E.D. 2000); see also *Shen v. Daly*, 222 F.3d 472, 479 (8th Cir. 2000) (citing the *Restatement (Second) of Torts* § 874 (1979). Plaintiffs' claims for breaches of fiduciary duties are based on the agency/principal relationship between Defendants and their customers. *Restatement (Second) of Agency*, § 425, comment f. "[A]n agent who holds title to something for the principal is subject to a duty to the principal ... to use it only for the principal's benefit ...." *Restatement (Second) of Agency*, § 423. If Defendants breached their fiduciary duties as Plaintiffs have properly alleged, then Defendants must disgorge the revenue sharing payments because Plaintiffs are entitled to recover from Defendants what Defendants received in connection with the breaches. *Restatement (Second) of Agency*, § 407.

As to Plaintiffs' claim of unjust enrichment, the three required elements of such a claim are met by Plaintiffs' allegations that Defendants have retained the revenue sharing payments at Plaintiffs' expense and in breach of Defendants' fiduciary duties. See generally, *S & J, Inc., d/b/a American Insurance Management v. McCloud & Company, LLC*, 108 S.W.3d 765, 768 (Mo. App. S.D. 2003). Contrary to what Defendants argue, the mere fact that the benefits at issue here were conferred on Defendants by the mutual fund companies rather than directly by

6

Plaintiffs themselves, does not somehow bar a claim for unjust enrichment. See Petrie v. Levan, 799 S.W.2d 632, 635 (Mo. App. W.D. 1990). Nor does Plaintiffs' claim for unjust enrichment rest on or require any allegations of fraud or reliance.

### (3)  The Question of Standing

Defendants further contend that the named Plaintiffs lack standing to seek recovery of revenue sharing payments paid to Defendants by any of the preferred mutual fund companies other than the two particular funds that happen to be owned by the Plaintiffs themselves.

In Missouri, "standing is a jurisdictional matter ante- cedent to the right to relief." Farmer v. Kinder, 89 S.W.3d 447, 451 (Mo. banc 2002). To determine whether a party has standing is to ask "whether the persons seeking the relief have the right to do so." Id. If a court determines that a party lacks standing, it "must dismiss the case because it does not have jurisdiction of the substantive issues presented." Id. Put differently, "if a party is found to lack standing sufficient to  maintain the action and therefore has no right to relief, the court necessarily does not have jurisdiction of the question presented and may not enter a judgment on that question for or against any of the parties." Western Casualty & Surety Co. v. Kansas City Bank & Trust, 743 S.W.2d 578, 580 (Mo. App. 1988).

Here, however, Defendants have posed a question which, assuming *arguendo* that its core premise might have any merit at all[5], is more properly raised and considered in the context of the class certification stage of this type of proceeding, rather than in a motion to dismiss.  At the class certification stage, it is at least conceivable that the matter of which mutual funds were owned by the named plaintiffs (compared to other class members who may perhaps have owned different mutual funds), might *possibly* have some bearing on certification-related issues such as whether Plaintiffs could satisfy the typicality-of-claims element pursuant to Rule 52.08, whether or not the proposed class definition was overbroad, whether subclasses were needed depending on which mutual funds a class member owned, etc.

At this stage of the action, however, and in view of the applicable standard of review that governs motions to dismiss, Defendants' "standing" argument misses the mark.  Taking the allegations of the Petition as true, Plaintiffs are members of the defined class and have the same interests and suffered the same injury as other class members.  That is sufficient to survive the motion to dismiss.

---

[5] The premise that a plaintiff in this type of proceeding might not have standing to assert claims on behalf of class members who are similar to the plaintiff in virtually all other respects merely because those class members held shares in a different preferred mutual fund than the plaintiff, seems questionable at the very least.  In their papers to this Court, Plaintiffs have cited a number of cases in which courts appear to have allowed and certified classes wherein the named plaintiffs represented a class that invested in holdings other than just the ones the named Plaintiffs themselves held.  See, e.g., Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 923 (3rd Cir. 1992).  See also Haas v. Pittsburg Natl. Bank, 526 F.2d 1083-1088-1089 (3rd Cir. 1975).

## **(4)   Are Plaintiffs' Claims Precluded by SLUSA?**

SLUSA precludes certain "covered" class actions from being brought at all, in either state or federal court, by any private party if the action is based on state law claims and it alleges a "misrepresentation or omission of material fact in connection with the purchase or sale of covered securities."[6]  See 15 U.S.C. § 78bb(f).

As our Eighth Circuit has stated, a defending party who wishes to establish that a claim falls within the scope of the above-quoted SLUSA preclusion language must demonstrate that the claim satisfies four criteria.  The party must show that:

> (1) the action is a "covered class action" under SLUSA, (2( the action purports to be based on state law, (3) the defendant is alleged to have mis-represented or omitted a material fact (or to have used or employed any manipulative or deceptive device or contrivance), and (4) that the defendant is alleged to have engaged in the conduct described by criterion (3) "in connection with" the purchase or sale of a "covered security."

Green v. Ameritrade, Inc., 279 F.3d 590, 596 (8th Cir. 2002).

The burden is on the defendant who raises this affirmative defense to show that these requirements are met.  Id. at 597. The question the Court must consider is whether the petition "can reasonably be read as alleging a sale or purchase of a

---

[6] The parties here acknowledge that this is a "covered" class action dealing with "covered" securities, and that the action is based on state law claims.  In addition, although Plaintiffs do not concede the point, there appears to be little real doubt that in the aftermath of the U.S. Supreme Court's holding in Dabit, and as Judge Webber explicitly acknowledged in his second remand order, the claims here at issue probably do meet the "in connection with" the purchase or sale of securities element of SLUSA as well.  Therefore, the remaining question is whether, within the statutory contemplation and legislatively intended meaning of the Act, Plaintiffs' lawsuit is one which has "[alleged] a misrepresentation or omission of material fact."

covered security made **in reliance** on the allegedly faulty information provided to [the plaintiff] and to putative class members by [the defendant]." Id. at 598. (emphasis added) If the answer is "yes," the petition must be dismissed. See Prof. Management Associates, Inc. v. KPMG LLP, 335 F.3d 800, 802-803 (8th Cir. 2003).

In making their SLUSA preclusion argument, Defendants rely very heavily on the relatively recent U.S. Supreme Court decision in Merrill Lynch, Pierce, Fenner & Smith v. Dabit, 126 S. Ct. 1503 (2006).

However, in closely analyzing Dabit, one thing is very clear to this Court: Dabit is in some respects fundamentally different from this case. Dabit, very much unlike this case, contained factual allegations, including but not limited to the deliberate artificial manipulation and inflation of stock prices[7], that amounted to a classic case of both outright fraud and fraudulent concealment. In contrast, in the case at bar, Plaintiffs have not pleaded such allegations.[8]

A close reading of Dabit strongly suggests that allegations in the nature of fraud or fraudulent concealment are required, whether the plaintiffs are purchasers, sellers or merely holders

---

[7] See Dabit, 126 S. Ct. at 1507, n.2.

[8] The Court believes this to be true notwithstanding the fact that the revenue sharing arrangements that Plaintiffs have complained about do, at least incidentally, involve an omission of what might in other contexts be deemed a "material" fact, since it is alleged that these arrangements were generally not disclosed to Plaintiffs or to class members generally. This does not necessarily mean, however, that such nondisclosures rise to the level of an "omission of material fact" within the legislatively intended meaning of SLUSA, an enactment which appears to this Court to be aimed at conduct that is seriously fraudulent in nature.

of securities, in order for SLUSA preclusion to apply.   The facts in Dabit dealt only with claims of fraud and reliance; and the Supreme Court's emphasis of this is clear throughout the entire opinion, beginning with its summation of the "gist" of Plaintiffs' complaint in that case as concerning Merrill Lynch's actions of "disseminating misleading research and thereby manipulating stock prices."   Dabit, 126 S.Ct. at 1507.   The Court continued by noting that SLUSA's "stated purpose" was to "prevent certain State private securities class action lawsuits **alleging fraud** from being used to frustrate the objectives" of federal law.   Id. at 1513.   (emphasis added)   The Court in concluding emphasized that "[t]he misconduct of which respondent complains here--fraudulent manipulation of stock prices--unquestionably qualifies as fraud in connection with the purchase or sale of securities . . . ."   Id. at 1515  (internal quotation marks omitted)

   If such a reading of Dabit is correct, as this Court believes it is, then Dabit does not require the dismissal of Plaintiffs' state law claims in this case.   It is clear to the Court from a close reading of the Petition that, notwithstanding the fact that the Petition alleges throughout that the revenue sharing arrangements were undisclosed, the Petition in its essence is about breaches of fiduciary duty and unjust enrichment, not about fraud and reliance.

11

There is no claim for fraud or fraudulent concealment set out in the Petition; reliance, therefore, is not an element the Plaintiffs are required to prove.   There is no claim in the Petition that depends upon Plaintiffs proving either any "inducement" by the Defendants or reliance by the Plaintiffs; and Plaintiffs clearly have not pleaded such inducement or reliance.   Defendants' contention that the Petition "implicitly" contains such allegations is, the Court believes, not consistent with a reasonable objective reading of the Petition---a pleading which in any event must, on a motion to dismiss, be construed in a manner so as to give Plaintiffs the benefit of all favorable inferences that might reasonably be drawn therefrom.

The issue, in the Court's view, may depend on how broadly the key preclusion language of SLUSA ("alleging...a misrepresentation or omission of material fact in connection with the purchase of sale of a covered security")[9] is meant to be interpreted.   While there is no doubt that, as the Supreme Court expressly said in Dabit, this operative statutory language was meant to be construed somewhat broadly so as not to frustrate Congress's basic underlying purpose in enacting SLUSA[10], the following question still remains:   must the language be construed **so** broadly that it would be held to apply (and thus preclude a lawsuit) even in cases where, like the case at bar,

---

[9] See 15 U.S.C. § 78bb(f)(1).

[10] See Dabit, 126 S. Ct. at 1513.

its application would very arguably **go beyond** Congress's basic underlying purpose in enacting SLUSA?

That basic purpose, as the Supreme Court also indicated in Dabit, was simply to prevent "State private securities class action lawsuits **alleging fraud** from being used to frustrate the objectives" of the 1995 Private Securities Litigation Reform Act. Dabit, 126 S.Ct. at 1513. (emphasis added) This Court believes the breadth of construction that properly must be given to the preclusive language of SLUSA should be consistent with---but not greater than---its basic underlying statutory purpose. Here, application of the SLUSA preclusion language very arguably would exceed this statutory purpose, because while it is true that the facts alleged in Plaintiffs' Petition do (incidentally) involve omission of the fact that Defendants were receiving the "kickbacks" or "revenue sharing" from the preferred mutual fund companies, nevertheless, those allegations are not raised in connection with a claim that is in any real sense a claim for either fraud or fraudulent concealment.[11]

On the contrary, it is readily apparent from a fair reading of Plaintiffs' Petition that the real gist and gravamen of their

---

[11] For purposes of analysis here, there is no significant distinction between a claim for fraud and one for fraudulent omission/concealment. In Missouri, to state an actionable claim for fraudulent concealment, a plaintiff must essentially allege the same nine elements that are required to establish fraud by affirmative misrepresentation. Kansas City Downtown Dev. Corp. v. Corrigan Associates, 868 S.W.2d 210, 219 (Mo. App. W.D. 1994). At common law, mere "silence" or "the passive failure to disclose facts" was not considered actionable. Blaine v. J.E. Jones Const. Co., 841 S.W.2d 703, 705 (Mo. App. E.D. 1992). But as the law developed further, it held that in certain circumstances, if one party has an affirmative duty to disclose information, "that party's failure to disclose the information serves as a substitute for the false representation element required in fraud." Id. Such a duty to disclose may arise if there is a relation of "trust or confidence" between the two parties or similar relationship; see Dechant v. Saaman Corp., 63 S.W.3d 293, 295-296 (Mo. App. E.D. 2001).

complaint---and not just in some "artful pleading" sense, but rather in the sense of actual substance and reality---is instead a claim for breach of fiduciary duty.

In this regard, the Court would note that not only have Plaintiffs not pleaded any such claim for fraud or fraudulent omission/concealment, but they also have not pleaded any damages of the type that would normally be associated with such a claim. In the Court's view, this is not fundamentally a matter of what Defendants choose to call "artful pleading," but is instead mainly because the core facts Plaintiffs have alleged would, quite simply, in many and probably even most cases of individual class members, not give rise to such damages.  Plaintiffs have not alleged that they were led into devalued stocks, or that they suffered any other type of actual pecuniary loss stemming from the alleged revenue sharing of which they were unaware; and this is at least in significant part because of the fact such damages would not necessarily result at all, and in many or most cases probably didn't.  Plain and simple, many and perhaps most of the putative class members could not allege such damages even if they wanted to---because they did not in fact suffer any such damages, and because that is simply not the fundamental nature of the wrong which the Petition alleges.

Why is this significant?  It is significant, in the Court's view, because fraud (and fraudulent concealment as well) is

necessarily in the nature of an action for deceit for the recovery of actual and exemplary damages; that is, it is a tort that is necessarily economic in nature, and seeks the recovery of an actual pecuniary loss. See Jurcich v. General Motors Corp., 539 S.W.2d 595, 600-601 (Mo. App. 1976). Proof of actual damages is an **essential element** of fraud, and a plaintiff therefore has no fraud cause of action if he or she "has not sustained any damages as a result of the fraud charged." Toenjes v. L.J. McNeary Const. Co., 406 S.W.2d 101, 106 (Mo. App. 1966); see also Tindall v. Holder, 892 S.W.2d 314, 321 (Mo. App. S.D. 1994); 37 C.J.S. *Fraud*, § 52 (1997); 37 Am Jur 2d *Fraud and Deceit*, § 272 (2001).

Here, then, the Court is confronted with a cause that Plaintiffs not only have not pled as a fraud action, but that in the case of many (and likely most) putative class members could not possibly state any actionable fraud claim, due to the lack of necessary damages. And yet Defendants contend the case still must be dismissed under the SLUSA preclusion language because (they say) Plaintiffs are in fact alleging a kind of fraud, and their efforts to label the petition as something other than that are nothing more than an example of "artful pleading" in an attempt to get around SLUSA.

While Defendants' "artful pleading" argument perhaps may sound somewhat persuasive at first blush, does it withstand

15

close scrutiny?   After careful consideration the Court concludes that the answer to that question is "no."   The Court finds this to be so for much the same reasons that it finds the type of behavior which Plaintiffs have alleged on the part of Defendants, even though that behavior admittedly was somewhat deceptive, does not fall within the intended ambit of the SLUSA preclusion language.

Missouri, like the federal courts themselves, recognizes that it is the actual substance of what a petition alleges, and not the mere label that the pleader may attach to it, that determines how the petition should be treated.   Thus, "artful pleading" cannot change a petition that is fundamentally about one thing into something else.   See, e.g. Burkin v. Burlington Northern Railroad Co., 690 S.W.2d 508 (Mo. App. E.D. 1985). Here, however, Plaintiffs have pleaded a cause of action that, in its very core and essence (and not as a matter of "artful pleading"), is fundamentally not a claim for fraud.   It is, instead, fundamentally a claim that is about breach of fiduciary duty.

Thus, the Court finds the cases Defendants cite in support of their "artful pleading" argument to be unconvincing, because most of those cases either explicitly or implicitly recognize that the argument has merit only when the essence of the allegations raised in a plaintiff's petition, even though

16

labeled as something else, allege a form of securities fraud. See, e.g., <u>Professional Mgmt. Assocs., Inc. Employees' Profit Sharing Plan v. KPMG LLP</u>, 335 F.3d 800, 803 (8th Cir. 2003) (holding negligence claim precluded by SLUSA because it was **"essentially a securities fraud claim"**). (emphasis added)

Similarly, see <u>Dudek v. Prudential Securities, Inc.</u>, 295 F.3d 875, 879-880 (8th Cir. 2002) (holding breach of fiduciary duty and unjust enrichment claims precluded by SLUSA because the essence of the complaint was that defendant misstated or omitted material facts in connection with the purchase and sale of a security). Here, for the reasons previously set forth, the Court finds that the essence of Plaintiffs' Petition is not based on a claim of fraud, nor fundamentally predicated on any material misrepresentations or omissions in connection with the sale of the preferred mutual fund companies from whom Defendants received the revenue sharing payments. Instead, as previously explained, the Petition is fundamentally about claims of breach of fiduciary duty by Defendants; and any allegations of omissions in regard to the revenue sharing are merely ancillary to those breach of fiduciary duty claims.

Finally, the Court acknowledges and is cognizant of the fact that Defendants have cited several cases which, although some may arguably be distinguishable from the instant case in certain respects, nevertheless do, frankly, tend to lend some

support to Defendants' position that "revenue sharing" claims like this one are barred by the SLUSA preclusion language. See generally, In re Edward Jones Holders Litigation, 453 F. Supp.2d 1210 (C.D. Cal. 2006) (holding that "holder" claims alleging wrongful acceptance and retention of kickbacks by brokers were precluded under SLUSA); see also In re Dreyfus Mutual Fund Fee Litig., 428 F. Supp.2d 342, 355 (W.D. Pa. 2005); In re Franklin Mutual Funds Fee Litig., 388 F. Supp.2d 451, 472 (D. N.J. 2005); and In re Lord Abbet Mutual Funds Fee Litig., 407 F. Supp.2d 616, 628 (D. N.J. 2005).

After reviewing these cases, the Court is persuaded that they are arguably distinguishable from the instant case in certain respects, and that they involve more overtly palpable allegations that brokerage customers were "induced" or "steered" towards and/or strongly encouraged to hold preferred funds, whereas the Petition here does not overtly do so. To whatever extent, however, that these few other cases might arguably be viewed as not being significantly distinguishable from the case at bar, this Court respectfully disagrees with the holdings in those cases.[12]

---

[12] The court in Edward Jones, for example, appears to this Court to have both (1) read more into the Supreme Court's holding in Dabit than perhaps is justified, in terms of what constitutes a fraudulent and preclusion-triggering "misrepresentation" or "omission" within the meaning of SLUSA, as well as (2) read certain allegations into the plaintiffs' petition that were not alleged in the petition and that, while they might or might not ultimately be shown to be true, would seem to this Court at the very least to require some actual proof, rather than simply being taken for granted and declared "virtually axiomatic," as the court in that case did. Edward Jones, 453 F. Supp.2d at 1215. While similar cases from other jurisdictions are of course entitled to respectful consideration, and this Court does very much respect them, the Court is not bound by them if it finds them not persuasive.

## Conclusion

Under the applicable standard of review, the Court must deny a motion to dismiss if it appears the stated allegations meet the elements of a recognized cause of action, *or* of a cause of action "that might be recognized in that case." Nazeri, 860 S.W.2d at 306. Here, while Defendants have offered some weighty arguments, and the issue is one on which reasonable minds may differ, for the foregoing reasons the Court is not persuaded that Plaintiffs' action is precluded by SLUSA. Defendants likewise have not shown that any of their other asserted grounds to dismiss of this cause (federal preemption, failure to state a claim under Missouri law, and alleged lack of standing) present a valid basis for dismissal. Accordingly, the Court finds the motion to dismiss should be denied.

**WHEREFORE**, it is hereby **ordered** that Defendants' Motion to Dismiss is **denied.**

SO ORDERED:

Angela T. Quigless, Judge

Dated: July 27, 2007

cc:  Robert D. Blitz, Esq.
     *Local Counsel for Plaintiffs*
     Blitz, Bardgett & Deutsch, L.C.
     120 South Central Avenue, Suite 1650
     St. Louis, MO  63105

19

Jeffrey J. Kalinowski, Esq.
*Counsel for Defendants*
Blackwell Sanders Peper Martin
720 Olive Street, 24th Floor
St. Louis, MO  63101