Kalinowski
Declaration Exhibit R

STATE OF MISSOURI   )
                     )
CITY OF ST. LOUIS   )



**MISSOURI CIRCUIT COURT**
**TWENTY-SECOND JUDICIAL CIRCUIT**
**(City of St. Louis)**

MARIANO V. FAVAZZA
CLERK, CIRCUIT COURT
BY_____DEPUTY

ELEANOR BACHMAN, Individually )
and on Behalf of All Others )
Similarly Situated, and KAROL )
B. McCLINTOCK and KAROL B. )    Cause No. 22052-01266-02
McCLINTOCK IRA, Individually )
And on Behalf of All Others )    Division No. 8
Similarly Situated, )
                     )
      Plaintiffs, )
                     )
vs.                     )
                     )
A.G. EDWARDS, INC., and A. G. )
EDWARDS & SONS, INC., )
                     )
      Defendants. )

<u>**MEMORANDUM AND ORDER CERTIFYING CLASS**</u>

    Before the Court is the Plaintiffs' Motion for Class Certification. The Court now rules as follows.

### **Background**

    Plaintiffs have brought this action on behalf of themselves, and a putative class of similarly situated individuals, alleging in essence that Defendants received "revenue sharing" fee payments that were paid to Defendants by certain mutual fund companies in return for Defendants' clients maintaining shares of those funds in their A.G. Edwards brokerage accounts. Plaintiffs allege Defendants improperly profited from their assets when these "revenue sharing" payments were received and

1

retained by A.G. Edwards rather than such payments being remitted to the clients themselves (i.e., Plaintiffs and other class members.) Based on these underlying allegations, the Petition asserts two counts against Defendants, one for breach of fiduciary duty and the other for unjust enrichment. Both of these theories seek disgorgement of the profits stemming from Defendants' retention of the alleged revenue sharing payments.[1]

As to these claims, Plaintiffs now seek certification of a class defined as follows:

> All persons or entities who maintained a brokerage account at A.G. Edwards in which they held shares of any mutual funds that directly or through an affiliate compensated A.G. Edwards based, at least in part, upon the holdings of A.G. Edwards' clients in the respective mutual funds during any part of the period beginning on April 12, 2000 and ending on April 12, 2005 (the "Class Period"). Excluded from the class are Defendants, their officers, directors, employees, affiliates, legal representatives, heirs, successors, and assigns, any entity in which Defendants have or had a controlling interest, any person or entity affiliated with any of the mutual fund companies that provided such compensation to Defendants, and the immediate family members of each of the foregoing excluded parties ("the Class").

## Discussion

The class certification motion was heard and argued on May 13, 2008; testimony and evidence was adduced, and extensive argument was offered by both sides. In addition, the Court has carefully studied the respective parties' voluminous legal

---

[1] For a fuller discussion of the detailed factual and procedural background of this case, see this Court's order herein of July 27, 2007 denying the Defendants' Motion to Dismiss.

memoranda and supporting exhibits offered in support of their respective positions.

In support of their motion, Plaintiffs contend that this case meets all four of the prerequisites of Rule 52.08(a), as well as the requirements of Rule 52.08(b)(3). Defendants oppose class certification on a multiplicity of grounds, not all of which the Court finds the need to expressly address in this Order.[2]

The three most significant arguments that Defendants have raised in opposition to the motion, which *do* warrant some discussion in the Court's view, are: (1) the claim that the alleged "non-disclosure" by Defendants of the revenue-sharing arrangements to Plaintiffs and other class members who held shares of the affected mutual fund companies is both a key issue in this case as well as an "essential element" that Plaintiffs must prove in order to be entitled to any recovery under either their breach of fiduciary duty or unjust enrichment theories, and that this in turn would make class action treatment inappropriate because it would necessitate extensive individualized inquiry into the exact amount and nature of disclosure that was made to each affected client with respect to each of the 40 or so mutual fund companies who made the kickback

---

[2] For example, the Court is not going to address Defendants' claims that the two elderly women who are named Plaintiffs, Ms. McClintock and Ms. Bachman, are not adequate class representatives due their age and alleged infirmities (one is legally blind), and the argument that they are somehow being manipulated by their lawyers rather than acting as true class representatives. These claims are supported by neither the record nor logic, and are not worthy of serious discussion.

payments over the five-year class period, which in turn would mean (Defendants say) either that Plaintiffs' claims were not "typical" of many other class members' claims, and/or that the common issues of law and fact would not "predominate" over the issues affecting only certain individual class members as required by the Rule; (2) the claim that the required typicality element is defeated as to any putative class members who held shares in fund companies other than just the two individual fund companies that the named Plaintiffs themselves held shares in; and (3) the contention that common issues would not predominate over individual issues because the proposed class is a nationwide (50-state) class, and therefore the variations in the many different state laws that supposedly would have to be applied would result in common class-wide issues being "swamped" by a multiplicity of various individual state-law issues that could not be manageably grouped.

Each of these three issues will be discussed below. The Court will first address some of the general principles that apply to class certification.

Rule 52.08, which governs the Court's determination as to whether an action should be maintained as a class action, is virtually identical to Federal Rule 23; and thus interpretations of the federal rule can also be considered when interpreting the Missouri rule.  <u>State ex rel. Byrd v. Chadwick</u>, 956 S.W.2d 369,

4

378 (Mo. App. W.D. 1997).  The testimony and evidence heard at a class certification hearing properly go to the question of whether the prerequisites of a class action are met.[3]  Initially, under Rule 52.08(a), those prerequisites are:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3 the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 52.08(a).  All four criteria must be satisfied.  <u>State ex rel. American Family Mutual Ins. Co. v. Clark</u>, 106 S.W.3d 483, 487 (Mo. banc 2003).  In addition to the elements of Rule 52.08(a), a plaintiff must also satisfy at least one of the three requirements of Rule 52.08(b).  <u>Id</u>.  Here (as in <u>Clark</u>), the Plaintiffs seek class certification based upon 52.08(b)(3), which requires the motion court to find both (1) that the questions of law or fact common to the members of the class "predominate over any questions affecting only individual members," and (2) that a class action "is superior to other available methods for the fair and efficient adjudication of the controversy."  <u>Id</u>.

---

[3] The class certification decision is independent of the ultimate merits of the lawsuit. <u>Craft v. Philip Morris</u>, 190 S.W.3d 368, 377 (Mo. App. E.D. 2005.  However, a court may still properly consider certain evidence relating to the merits of the case, to the limited extent that this may sometimes be necessary in order "to determine whether the prerequisites for class certification have been met." <u>Id</u>.  At the same time, however, in determining a motion to certify a class, the motion court generally must accept the allegations of the plaintiffs' petition as true. See <u>Hale v. Wal-Mart Stores, Inc.</u>, 231 S.W.3d 215, 224 (Mo. App. W.D. 2007).

Courts of course should not grant class certification lightly; at the same time, however, "in close cases" they should "err in favor of certification," because the class can always be modified or even de-certified as the case progresses. <u>Meyer v. Fluor Corp.</u>, 220 S.W.3d 712, 715 (Mo. banc 2007).

With these general principles in mind, the Court turns to their application to the case at bar, both as a general matter and then with specific reference to the three major issues in this case previously mentioned.

## A.   The Required Class Action Prerequisites in General

### (1)   Numerosity

Numerosity is not in dispute in this case.

### (2)   Commonality

Commonality is not seriously in dispute here (although the separate question of whether common questions "predominate" over questions affecting only individual members is seriously disputed, as will be discussed later[4]).   Commonality is not required on every question raised in a class action; see <u>DeBoer v. Mellon Mortgage Co.</u>, 64 F.3d 1171, 1174 (8th Cir. 1995).   The requirement is met when one or more key legal questions "linking the class members is substantially related to the resolution of the litigation." <u>Paxton v. Union Nat'l. Bank</u>, 688 F.2d 552, 561

---

[4] The question sometimes arises just what constitutes the latter type of question, as opposed to one that is said to be "common" to the members of the class.  If, in order to make a prima facie showing on a given factual or legal question, the members of a class will need to present evidence that varies from member to member, then it is an "individual" question, for purposes of determining whether a class action can be certified on the ground that common questions predominate over individual ones. <u>Hale</u>, 231 S.W.3d at 224.

(8th Cir. 1982); see also <u>Rentschler v. Carnahan</u>, 180 F.R.D. 114 (E.D. Mo. 1995).   The Court concludes there are at least several key common issues in this case applicable to all class members, including among others:  whether Defendants were fiduciaries to Plaintiffs and other members of the class during the Class Period; whether Defendants breached their fiduciary duties to Plaintiffs and other class members by receiving and then retaining the complained-of "revenue-sharing" compensation from certain mutual fund companies during the Class Period; and whether Defendants were unjustly enriched thereby and should make restitution.

### (3)  Typicality

The element of typicality is in dispute in this case.  In general, the typicality element requires that a class representative "must be part of the class and must possess the same interest and suffer the same injury as the class members." <u>Harris v. Union Electric Co</u>., 766 S.W.2d 80, 86 (Mo. banc 1989). However, this does not mean members' claims must necessarily be identical with one another.  The burden of demonstrating typicality "is fairly easily met so long as other class members have claims similar to the named plaintiff." <u>Hale</u>, 231 S.W.3d at 223.  "If the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory, factual variations in the individual claims

will not normally preclude class certification." Id. Rather, typicality is meant simply to preclude class certification of those actions involving legal or factual positions of the class representative "which are markedly different from those of other class members." Id. Beyond those general guidelines, typicality in this case is best discussed with reference to the specific arguments Defendants herein have raised---such as their claim that typicality is defeated here because Plaintiffs Bachman and McClintock cannot represent any alleged class members who owned shares in mutual funds different than just the two particular funds which Plaintiffs themselves happened to own.

### (4)   Adequacy of Representation

As to adequacy of representation, the Court has concluded that both the named Plaintiffs and their counsel will fairly and adequately protect the interests of the class.[5]

### (5)   Predominance of Common Issues

As mentioned earlier, whether common issues "predominate" over issues affecting only individual class members (as required by Rule 52.08(b)(3)) are disputed by the parties in this case. However, since that dispute plays out very much in the context

---

[5] The possibility or likelihood that a class representative might be subject to "unique defenses" is also sometimes deemed to be an aspect of adequacy of representation; see, e.g., Gary Plastic Packaging Corp. v. Merrill Lynch, 903 F.2d 176, 180 (2nd Cir. 1990). As discussed later herein, to the extent that Plaintiff McClintock, along with a relatively quite small percentage (about 3% or so) of other class members might possibly be subject to the "unique defense" of having signed a contractual choice-of-law provision supposedly binding them to the law of the state of New York regarding their relationship with Defendants, this would not preclude certification, because it could be handled (if necessary) by making her the representative of a sub-class consisting solely of the members of that particular subgroup.

of the specific arguments that Defendants have asserted regarding (a) their claims that the "non-disclosure" of the alleged kickbacks in this case is a key issue that defeats any such predominance; and (b) their claims that the many material variations in the 50 different state laws that they say would apply in this case would likewise prevent any such predominance, the Court will thus limit its discussion of the predominance requirement to its analysis of those specific arguments.[6]

### (6)  Superiority to Other Available Methods

Lastly, Rule 52.08(b)(3) also requires the Court to determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Here, the Court has no difficulty in concluding that this criterion is met and satisfied, assuming that the alleged problems with typicality and predominance of common issues can be adequately answered. In this regard, the common-question-predominance element is especially important, because its fundamental object and purpose is "to get at cases where a class action promises important advantages of economy of effort and uniformity of result . . .," and it effectively tests whether proposed classes are "sufficiently cohesive to warrant adjudication by representation." Dale, 204 S.W.3d at 175. In

---

[6] As a general observation, however, the Court will note that Missouri courts are clear that the common-question-predominance factor for class certification, under Rule 52.08(b)(3), is in fact "far more demanding" than the mere "commonality" prerequisite under Rule 52.08(a). See Dale v. DaimlerChrysler Corp., 204 S.W.3d 151, 175 (Mo. App. W.D. 2006); see also Craft, 190 S.W.3d at 381.

other words, given the nature of this particular case and controversy, if the common-question-predominance and closely related objections expressed by Defendants can be adequately overcome, then there would appear to be no reason not to find that a class action is indeed superior to other theoretically available methods for adjudicating the controversy. "Class actions which aggregate small claims that could not otherwise be brought are exactly the type of claims that satisfy the superiority requirement." <u>Hale</u>, 231 S.W.3d at 229 (citing <u>Deposit Guar. Nat'l. Bank v. Roper</u>, 445 U.S. 326, 339 (1980)).

## B.  Defendants' Three Major Arguments in This Case

As mentioned in their written and oral opposition to the motion for class certification, Defendants have stressed very heavily three arguments in particular. Each is discussed below, in no particular order.

### (1) The Argument That Alleged Non-Disclosure of the Revenue-Sharing Defeats Common Question Predominance

Defendants argue that Plaintiffs' Petition makes clear that Defendants' "alleged non-disclosures" of the revenue-sharing payments to their affected clients "are essential to Plaintiffs' claims[7];" that Plaintiffs' claims for monetary recovery (under either their breach-of-fiduciary-duty claim or unjust enrichment claims) would therefore be "completely undermined if the

---

[7] Defendants' Memorandum in Opposition, at 30.

10

payments were in fact disclosed[8];" and that since every one of the 40 or so various mutual fund companies that participated in the revenue-sharing schemes made various different kinds and levels of "disclosures" of the revenue-sharing in the prospectuses they sent to fund shareholders, this would necessarily defeat the common-question-predominance requirement of Rule 52.08(b)(3), because "the differences in disclosures means that a trier of fact will be required to examine the disclosures made by 40 or so different fund families to determine whether there was a failure to disclose."[9]

Further, Defendants say, at least a small percentage of the clients (including Ms. McClintock herself) signed contractual language which arguably amounted to a disclosure of such fees, and "if a customer agreed to A.G. Edwards' receipt of revenue sharing, it is impossible for the customer to claim that there was a failure to disclose."[10]

Though it may at first seem to have a surface of plausibility, the Court finds this line of argument to be unconvincing. First, in essence it completely ignores this Court's holding in its July 27, 2007 Motion to Dismiss Order that Plaintiffs' claims, as pleaded in their Petition, are fundamentally **not** about fraud and deception, but rather about

---

[8] Id.

[9] Id., at 31.

[10] Id., at 32. As discussed *infra*, however, this argument runs counter to the teachings of our Supreme Court in Clark.

breach of fiduciary duty and unjust enrichment. Both potentially viable legal theories in this case which do not necessarily require proof of deception or non-disclosure in order to entitle Plaintiffs (and similarly situated class members) to the relief that they seek herein.

Second, it ignores that this case is about the **Defendants'** alleged breaches of fiduciary duty, not about anything that the mutual fund companies did or did not do. Third, the Court has looked very closely at the claim-- supported by little in the record other than Mr. Moorman's affidavit and testimony, (assuming *arguendo* his testimony in this area did not delve too much into the merits) ---that some putative class members may have signed contractual agreements with A.G. Edwards containing fine print which allegedly "disclosed" the so-called revenue sharing fees at issue.[11]

This claim ignores the fact that, as our Supreme Court has made clear, the mere existence of *some* possible individual issues in a case such as this does not at all automatically establish that common issues do not predominate. "The predominance requirement . . . does not demand that every single issue in the case be common to all class members . . . ." <u>State ex rel. American Family Mutual Ins. Co. v. Clark</u>, 106 S.W.3d

---

[11] Without definitively deciding anything about it, the Court nonetheless notes that the so-called disclosure language that Plaintiff McClintock allegedly agreed to, which is cited at page 32 of Defendants' Memorandum in Opposition, arguably is *extremely* vague and ambiguous, and as such, although it arguably might alert a reasonable consumer to something as specifically referenced therein as "12b-1 fees," by the same token would very arguably would *not* alert such a consumer to the existence of the so-called "revenue-sharing" fees or "kickbacks" that are at issue in this lawsuit.

483, 488 (Mo. banc 2003).  "The predominant issue need not be 'dispositive of the controversy or even be determinative of the liability issues involved.'"  Id. (quoting with approval Newberg on Class Actions § 4.25, at 169 (4th ed. 2002)).  "A single common issue may be the overriding one in the litigation, despite the fact that the suit also entails numerous remaining individual questions."  Id. (emphasis added) "The predominance of [common issues] is not defeated simply because" individual questions may still have to be addressed after the predominant ones are addressed, and this even includes questions of "possible defenses to individual claims."  Id.

Thus, Defendants' class certification arguments concerning disclosure or lack of same are not persuasive.

### (2)   The Argument that Typicality is Defeated Because the Proposed Class Representatives do not Hold each Mutual Fund from Which Defendants Received Revenue-Sharing Payments

Defendants make the argument that typicality is largely defeated, to the extent that the proposed Class Representatives do not hold shares in each of the mutual fund companies that allegedly made the kickback payments to Defendants[12]; indeed,

---

[12] See generally, Defendants' Memorandum in Opposition, at 33-37.  As stated more specifically at page 36 thereof:

This is a class action involving securities sold by at least 40 mutual fund companies.  Even though the proposed Class Representatives own securities sold by only two fund companies--and therefore, on an individual basis, could only seek relief as to those two fund companies--the proposed Class Representatives nonetheless claim that they can act as class representatives for customers who own mutual funds sold by the other 38 mutual fund companies. It is not (and cannot be) the case that the vehicle of a class action endows a mutual fund shareholder with the additional ability to serve as a class representative for funds that she does not own.

But of course, it is not the mutual fund companies who are being sued, or whose conduct is at issue.

Defendants even question whether the named Plaintiffs have standing to sue on behalf of such other putative class members.

While the Court acknowledges that Defendants have indeed cited several cases that appear to support the proposition for which they advocate here, the Court does not find these cases to be persuasive[13]; other cases (with reasoning that strikes the Court as far more persuasive) have considered the same issue and reached the opposite conclusion. These other courts have expressly allowed investors in one security, in a class action context, to represent investors in other securities, when there was a common course of conduct by the defendant with respect to all such securities. See, e.g., <u>In re Mutual Funds Investment Litigation</u>, 519 F. Supp.2d 580, 583-587 (D. Md. 2007), and <u>In re Dreyfus Aggressive Growth Fund Litigation</u>, 2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sept 19, 2000), at *8.

Thus, the Court finds no merit to this second defense line of argument.

### (3) The Argument that a Nationwide Class Such as Plaintiffs Propose is Improper, Because it Would Require the Court to Contend With the Variations in Many Different States' Laws, Thereby Defeating Common-Question-Predominance

Lastly, in their written briefing to the Court, Defendants place *very* heavy reliance on the argument that since the proposed class here is by definition a nationwide class, (i.e.,

---

[13] Indeed, although it came in the context of a Motion to Dismiss rather than at the class certification stage, the Court has expressed skepticism earlier about this very same argument, when the argument was raised at that stage. See the Court's 7/27/07 MTD Order, at 8, n.5.

by definition and also by virtue of A.G. Edwards' nationwide customer base, the class would necessarily include residents of all 50 states plus the District of Columbia)[14], and since, according to Defendants, this would require the Court to apply the many significant variations in all the different states' laws concerning breach of fiduciary duty and unjust enrichment in order to resolve the claims of all the class members, these variations in the different states' law would result in a situation in which any class-wide common questions of law or fact would inevitably be "swamped" by many questions affecting only individual class members; and further that given such a large number of different states and the significant variations in their manifold laws, these differences could not be manageably sub-grouped.[15]

It is true that in the last decade or so, at both the state and federal court levels, nationwide *statelaw* class actions that involve the application of the laws of many different states have become heavily disfavored, to the point where it has now become almost universally accepted that such actions fail to meet the common-question-predominance element. (See generally,

---

[14] The Court notes also that a statewide class consisting solely of Missouri residents would appear to be out of the question in this action at the present time, as neither of the named Plaintiffs (one of whom resides in Arizona and the other in Pennsylvania) is a Missouri resident. Additionally, it appears from the record that roughly 95% of the absent class members live outside of Missouri.

[15] See generally, Defendants' Memorandum in Opposition, at 16-17 and 20-30, and their citation therein to various cases generally in support of this proposition such as, *inter alia*, Adams v. Kansas City Life Ins. Co., 192 F.R.D. 274, 277-278 (W.D. Mo. 2000); Clay v. American Tobacco Company, 188 F.R.D. 483, 501 (S.D. Ill. 1999); Rohlfing v. Manor Care, Inc., 172 F.R.D. 330, 341 (N.D. Ill. 1997).

*Comment: Uncertifiable?: The Current Status of Nationwide Statelaw Class Actions*, 54 Baylor L. Rev. 467 (Spring 2002)). It is also true, as Defendants note, that the Missouri Supreme Court as well has clearly adopted this consensus view. As our Supreme Court held in <u>Clark</u>, in rejecting a proposed class that would have required application of the significantly differing laws of fourteen (14) different states, "when class claims are governed by the [differing] laws of multiple states" it becomes much more difficult to show that questions common to the class exist and/or that such questions predominate (<u>Clark</u>, 106 S.W.3d at 486); and the trial court was found to have "abused its discretion" by certifying such a class (<u>id</u>. at 487).

However, no such difficulty arises in cases where **the law of a single state** (in this instance, Missouri, the forum state) can legitimately be applied to the entire nationwide class; and, contrary to what Defendants argue, this is exactly such a case.

Under <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797 (1985), the Supreme Court, in analyzing such cases from both a due process and conflict-of-laws perspective, recognized that to determine whether common questions of law predominate, a trial court must first determine what legal questions are necessary to resolve the plaintiffs' claims; what legal questions are necessary depends on what state law applies; and what law state applies depends, in turn, upon a choice-of-law analysis. As a

first step, the trial court must determine whether the claims of the proposed class members are subject to the laws of multiple states.  <u>Shutts</u>, 472 U.S. at 822-823.  **If** the answer to that question is "yes," then and only then must the court proceed to a second step, of engaging in a state-by-state law analysis to analyze whether the variations in the laws of the multiple states are great enough that they preclude a finding that common questions of law exist or predominate.  <u>Id</u>.

Thus, contrary to what is implied in Defendants' brief, it is not always necessary for a court considering certification of such a class to engage in an extensive state-by-state conflict of law analysis.  Rather, the test articulated in <u>Shutts</u> is that for a single state's law to validly apply there must be **either** a lack of ***material*** conflicts in the applicable state laws **or** the state applying its law class-wide must have a ***"significant contact or aggregation of contacts"*** to the claims of the class members, creating state interests such that choice of its law is neither arbitrary nor fundamentally unfair.  <u>Shutts</u>, 472 U.S. at 821.  Accordingly, satisfaction of **either** prong of this test will satisfy due process.  Thus, <u>Shutts</u> "does not require [a court] to apply the law of each state in which the plaintiffs reside nor does it prohibit the application of one state's law to all plaintiffs, regardless of residence."  <u>In re Lilco Sec. Litigation</u>, 111 F.R.D. 663, 670 (E.D.N.Y. 1986).

17

Under Missouri choice-of-law principles, Missouri law logically should apply to the claims of the class members in this action.[16] As to the substantive law of torts, Missouri has adopted § 145 of the *Restatement (Second) of Conflict of Law*; see Elmore v. Owens-Illinois, Inc., 673 S.W.2d 434, 436 (Mo. banc 1984); Kennedy v. Dixon, 439 S.W.2d 173, 181 (Mo. 1969); see also East Maine Baptist Church v. Union Planters Bank, 244 F.R.D. 538, 547 (E.D. Mo. 2007) (applying the Restatement test to a breach of fiduciary duty claim, *inter alia*).[17]

The Restatement § 145 provides in essence that the rights and liabilities of the parties are governed by the substantive law of the state with the "most significant relationship" to the occurrence and the parties.[18] Missouri courts have held that: "Pursuant to § 145(2) of the Restatement, the most significant relationship is determined by the following factors, according to their relative importance:  (a) the place where the injury occurred;  (b) the place where the conduct causing the injury occurred;  (c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (d) the

---

[16] When deciding a conflicts of law question, a forum state will choose the applicable substantive law based on its own conflicts of law doctrines.  See Reis v. Peabody Coal Co., 997 S.W.2d 49, 58 (Mo. App. E.D. 1999).

[17] It is well-established that an action for breach of fiduciary duty is an action in tort.  See Dairy Farmers of America, Inc. v. Travelers Insurance Company, 391 F.3d 936, 944 (8th Cir. 2004) (applying Missouri law); Zakibe v. Aherens & McCarron, Inc., 28 S.W.3d 373, 381 (Mo. App. E.D. 2000); *Restatement (Second) of Torts* § 874 (1979).

[18] To be precise, it states as follows:  "The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6 [regarding choice of law principles]."  The factors to be considered are then set forth in the text.

place where the relationship, if any, between the parties is centered." Harter v. Ozark-Kenworth, Inc., 904 S.W.2d 317, 320 (Mo. App. W.D. 1995). "These contacts are to be evaluated according to their relative importance with respect to the particular issue." Kennedy, 439 S.W.2d at 181.

In the case at bar, the nature of Plaintiffs' fiduciary duty claims is such that the place of Defendants' conduct, not Plaintiffs' injury, is more properly the focus of inquiry. In cases where "plaintiff may have suffered no pecuniary loss but the defendant rather may have obtained an unfair profit . . . the place of injury does not play so important a role for choice-of-law purposes." Restatement § 145, comment (f). Contrary to what Defendant argues, and as held by the federal district court for the Eastern District of Missouri in the Union Planters case, despite a general presumption in *personal injury* tort actions that the state with the most significant relationship is the one where the injury occurred, that presumption is generally limited to claims of personal injury, and in particular does **not** carry over to claims for "breach of fiduciary duty." Union Planters, 244 F.R.D. at 547. By the same token, if the state in which the conduct occurred and injury occurred differ and the place of injury bear little relation to the occurrence or the parties, "the place where the

19

defendant's conduct occurred will usually be given particular weight." Id. (citing Restatement § 145, *comment (e)*.)

For all of the reasons articulated in their briefs, the Court agrees with Plaintiffs that Missouri is the state with by far the most significant contacts to the conduct, parties and claims in this matter, and that it has an overwhelming aggregation of contacts to those claims. The conduct causing the injury clearly was orchestrated and occurred in Missouri; the Defendants are headquartered in Missouri; and in a real business sense the fiduciary relationships at issue, relative to Plaintiffs' claims, are "centered" in Missouri.[19]  Missouri also has the most contacts for purposes of the class members' claims of unjust enrichment; see Restatement (Second) of Conflict of Law, § 221.

In short, valid and applicable choice-of-law principles in this case warrant the application of Missouri law to the claims of all class members generally, regardless of their individual states of residence.  Since the claims of virtually all class members will therefore be governed by Missouri law, there will be no significant variations in the application of different states' laws, such as would defeat either the commonality or predominance requirements of Rule 52.08.

---

[19] Additionally, and although without definitively deciding where the "place of injury" would be in a case such as this for the typical class member, the Court would note that, from a legal standpoint, it is quite arguable that for most class members the injury occurred in Missouri (where A.G. Edwards is headquartered) rather than in their home state of residence. (See Plaintiffs' Reply Memorandum of Law in Further Support of Class Certification, at 29.)

And finally with regard to choice-of-law issues, the Court at this time rejects Defendants' argument that there is at least a small but "significant segment" of the overall putative class members who have "unambiguously agreed in writing that their relationship with A.G. Edwards is governed by New York law" by signing contractual client agreements to that effect.[20]  It is true, for the reasons and the citation authorities very well-articulated on page 22 of Defendants' Memorandum in Opposition, that as a general proposition Missouri courts do, indeed, "uniformly recognize and respect the right of parties to explicitly select and agree upon which state's law will govern their contractual relationships."[21]

However, as a matter of law such choice-of-law contractual provisions are generally limited to the parties' **contractual** relationships and the interpretation of contract terms, and do not apply to **tort law** claims, even tort law claims that could perhaps be said in a broad and loose sense to arise out of the contractual relationship.  See, e.g., Inacom Corp. v. sears, Roebuck and Co., 254 F.3d 683, 687 (8th Cir. 2001); Schoenbaum v. E.I. Dupont De Nemours & Co., 517 F. Supp.2d 1125, 1149 E.D. Mo. 2007).  Thus, the Court agrees with Plaintiffs, for all of the reasons and authorities cited at pages 32-35 of their Reply

---

[20] See Defendants' Memorandum in Opposition, at 22.  This alleged "significant segment" of the overall class membership may amount, perhaps, to roughly 3% or thereabouts.  See Plaintiffs Reply Memorandum, at 32-33, n.27.

[21] Defendants' Memorandum in Opposition, at 22.

Memorandum in further support of their class certification motion, that the choice-of-law contractual provisions invoked by Defendants, and which Defendants say "unambiguously apply" to a small but significant segment of the putative class and thereby bind at least that segment of class members to the law of the state of New York, are presumptively inapplicable to Plaintiffs' claims and the claims of any class members in this lawsuit. They do not apply to the plaintiffs' and class members' claims because those claims are not contract claims, but rather are tort claims.

Thus, the Court finds and holds at this time that Missouri law applies to all class members' claims, without exception, including that segment of the class who Defendants argue are covered by the contractual choice-of-law provisions.[22]

## ORDER

**WHEREFORE,** for all of the foregoing reasons, it is hereby **ordered** that (1) the Court finds and holds that the proposed Plaintiff Class satisfies all of the requirements of Rule 52.08(a) and 52.08(b)(3); and (2) it is also hereby **ordered** that this cause of action is certified and shall be maintained as a class action on behalf of the following class of plaintiffs specified immediately hereinafter:

---

[22] Additionally, in the unlikely event this particular issue might need to be reconsidered or revisited by the Court in the future, so that this alleged segment of the class might need to be treated separately, the Court sees no reason why the claims of that segment could not still be included within the ambit of this overall class action, if they were represented as a sub-class pursuant to Rule 52.08 (c)(4). This order certifying a class may of course always be later altered or amended as necessary, at any time before a final judgment on the merits. Rule 52.08(c)(1).

All persons or entities who maintained a brokerage account at A.G. Edwards in which they held shares of any mutual funds that directly or through an affiliate compensated A.G. Edwards based, at least in part, upon the holdings of A.G. Edwards' clients in the respective mutual funds during any part of the period beginning on April 12, 2000 and ending on April 12, 2005 (the "Class Period"). Excluded from the class are Defendants, their officers, directors, employees, affiliates, legal representatives, heirs, successors, and assigns, any entity in which Defendants have or had a controlling interest, any person or entity affiliated with any of the mutual fund companies that provided such compensation to Defendants, and the immediate family members of each of the foregoing excluded parties ("the Class");

and (3) it is further hereby **ordered** that the named Plaintiffs herein, Eleanor Bachman and Karol B. McClintock, are appointed as Class Representatives of the Plaintiff Class; and (4) it is further hereby **ordered** that the following law firms (who have already performed extensive work in this matter) are appointed as official Class Counsel:  Blitz, Bardgett & Deutsch, L.C. (located in Clayton, MO); Millberg Weiss LLP (located in New York, New York); and Stull, Stull and Brody (also located in New York, NY).

This order is subject to amendment or alteration under Rule 52.08(c)(1).

**SO ORDERED:**

Angela T. Quigless, Judge

Dated: July 10, 2008

23

cc:  Robert D. Blitz, Esq.
     *Local Counsel for Plaintiffs*
     Blitz, Bardgett & Deutsch, L.C.
     120 South Central Avenue, Suite 1650

     Jeffrey J. Kalinowski, Esq.
     *Lead Counsel for Defendants*
     Blackwell Sanders Peper Martin
     720 Olive Street, 24th Floor
     St. Louis, MO  63101