UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ELEANOR BACHMAN, individually and ) | |
| on behalf of all others similarly situated, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:09CV00057 ERW |
| ) | |
| A.G. EDWARDS, INC., and A.G. ) | |
| EDWARDS & SONS, INC., ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' Motion for Judgment Dismissing the Class Action Pursuant to SLUSA [doc. #13] and Plaintiffs' Motion to Remand [doc. #21].

**I.  PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiffs Eleanor Bachman, Karol B. McClintock and Karol B. McClintock IRA (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, filed a Class Action Petition against Defendants A.G. Edwards, Inc. and A.G. Edwards & Sons, Inc. (collectively, "Defendants"). The Class Action Petition was filed on April 12, 2005, in the Circuit Court of the City of St. Louis, Missouri, and alleges "breach of fiduciary duties and unjust enrichment on behalf of current and former clients of [Defendants]." (Petition, doc. #1-2, p.1). Specifically, Plaintiffs allege that Defendants "secretly collect[ed] millions and millions of dollars in undisclosed and improper kickbacks paid to the Defendants by certain preferred mutual fund families." (Petition, doc. #1-2, p.2). In support of their allegations, Plaintiffs point to the revenue sharing profits received by Defendants from preferred mutual fund companies on a quarterly basis

or at other regular intervals. As defined by Plaintiffs in their Petition, "[r]evenue sharing is a device through which mutual fund companies kickback a portion of their profits to the brokers." (Petition, doc. #1-2, p.2).

On May 13, 2005, Defendants filed a timely motion to remove the case to federal court, arguing that Plaintiffs' claims were preempted by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"). This Court determined that Plaintiffs' claims were not covered by SLUSA because they did not arise "in connection with" the purchase or sale of a security. Thus, the Court remanded the case back to the Circuit Court for lack of jurisdiction. *See generally Bachman v. A.G. Edwards*, No. 4:05CV00770 ERW, 2005 WL 2346896 (E.D. Mo. Sept. 26, 2005). Then, on April 19, 2006, Defendants filed a second notice of removal, again alleging that Plaintiffs' claims were precluded by SLUSA. Defendants based their argument on the United States Supreme Court's decision in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006), which was released after this Court's first remand. This Court again remanded the case to the Circuit Court, this time reasoning that Defendants' removal was not timely under 28 U.S.C. § 1446(b). *See generally Bachman v. A.G. Edwards*, No. 4:06CV00659 ERW (E.D. Mo. Nov. 7, 2006).

On January 9, 2009, Defendants filed their third Notice of Removal [doc. #1], arguing that testimony provided by Plaintiffs' damages expert provides a new ground for removal under SLUSA. Specifically, Defendants assert that the deposition testimony of Ms. Joan Warning revealed for the first time that Plaintiffs are now seeking commissions paid in connection with directed brokerage, in addition to damages based on revenue sharing. Plaintiffs oppose this assertion, arguing that Defendants' removal of the case was not timely under 28 U.S.C. §

2

1446(b). On January 16, 2009, Defendants filed the pending Motion for Judgment Dismissing the Class Action Pursuant to SLUSA [doc. #13]. Thereafter, on February 9, 2009, Plaintiffs filed the pending Motion to Remand [doc. #21]. The Court held a hearing on both of these Motions on April 17, 2009.

## II. PLAINTIFFS' MOTION TO REMAND

There are two Motions currently pending before the Court in this case. The Court will first address Plaintiffs' Motion to Remand [doc. #21], as the granting of that Motion would render moot Defendants' Motion for Judgment Dismissing the Class Action Pursuant to SLUSA [doc. #13].

### A. STANDARD FOR FEDERAL JURISDICTION

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). If a federal court takes action in a dispute over which it lacks subject matter jurisdiction, that action is a nullity. *See Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 17-18 (1951); *Hart v. Terminex Int'l*, 336 F.3d 541, 541-42 (7th Cir. 2003) (stating that it was "regrettable" that the case had to be dismissed for lack of subject matter jurisdiction "rendering everything that has occurred in [the] eight years [of litigation] a nullity"). However, "'[f]ederal courts have a virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Barzilay v. Barzilay*, 2008 WL 2952427, at *4 (8th Cir. Aug. 4, 2008) (alteration in original) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

A claim may be removed to federal court only if it could have been brought in federal court originally; thus, the diversity and amount in controversy requirements of 28 U.S.C. § 1332

3

must be met, or the claim must be based upon a federal question pursuant to 28 U.S.C. § 1331. *Peters v. Union Pac. R.R. Co.*, 80 F.3d 257, 260 (8th Cir. 1996). The party invoking jurisdiction bears the burden of proof that the prerequisites to jurisdiction are satisfied. *Green v. Ameritide, Inc.*, 279 F.3d 590, 595 (8th Cir. 2002); *In re Bus. Men's Assurance Co.*, 992 F.2d 181, 183 (8th Cir. 1993).

Removal statutes must be strictly construed because they impede upon states' rights to resolve controversies in their own courts. *Nichols v. Harbor Venture, Inc.*, 284 F.3d 857, 861 (8th Cir. 2002). Although a defendant has a statutory right to remove when jurisdiction is proper, the plaintiff remains the master of the claim and any doubts about the propriety of removal are resolved in favor of remand. *See In re Bus. Men's*, 992 F.2d at 183; *McHugh v. Physicians Health Plan of Greater St. Louis*, 953 F. Supp. 296, 299 (E.D. Mo. 1997). If "at any time before final judgment it appears that the district court lacks subject matter jurisdiction," the case must be remanded to the state court from which it was removed. 28 U.S.C. § 1447(c).

### B. PROCEDURAL REQUIREMENTS FOR REMOVAL

While 28 U.S.C. § 1441(a) establishes that a defendant has a right to remove "any action brought in State court of which the district courts of the United States have original jurisdiction," the party seeking removal must comply with certain procedural requirements. Specifically, a defendant must file a notice of removal in the district court within thirty days of receiving the initial pleading. However,

> [i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

4

28 U.S.C. § 1446(b). The time limits are mandatory and are strictly construed in favor of state court jurisdiction. *See McHugh*, 953 F. Supp. at 299 (internal citations omitted). If a defendant fails to timely file a notice of removal, the defendant's right to remove is foreclosed. *Id.* Strictly construing the removal rules "promote[s] expedited identification of the proper tribunal." *Id.*

### C. DISCUSSION

The Class Action Petition was filed on April 12, 2005, and Defendants filed their third Notice of Removal in this case more than thirty days later, on January 9, 2009. Thus, if it was ascertainable from the initial pleading that the case was removable, Defendants' Notice of Removal was not timely filed. Moreover, in order for the Notice of Removal at issue to be valid, it must have been filed within thirty days after Defendants received an "amended pleading, motion, order or other paper" from which they could *first ascertain* that the case was removable. Defendants argue that the deposition testimony of Ms. Joan Warning on December 11, 2008, revealed for the first time that Plaintiffs are now seeking additional damages (in the form of directed brokerage) which make this case removable under SLUSA. Plaintiffs argue that Defendants' removal of this case was untimely because Defendants had notice that Plaintiffs' claims included amounts received through directed brokerage well before Defendants filed their third notice of removal.

Plaintiffs first argue that Defendants received numerous motions, orders and other papers that provided notice of Plaintiffs' directed brokerage claims months before Ms. Warning's deposition. Assuming without deciding that the initial pleading in this case did not reveal that Plaintiffs were seeking amounts received through directed brokerage as damages, the issue becomes whether Defendants could have ascertained that this case was removable at any point

5

prior to the thirty day time period preceding the filing of their Notice of Removal. In examining this issue, "'the Court must determine at what point [Defendants] could have intelligently ascertained that the action was removable through reasonable scrutiny of the pleadings and facts of the action as it developed in state court.'" *Stewart v. Mayberry*, 2009 WL 1735773, at *2 (E.D. Mo. June 18, 2009) (quoting *Naef v. Masonite Corp.*, 923 F. Supp. 1504, 1512 (S.D. Ala. 1996)). In determining whether the basis for removal was ascertainable, judges in the Eastern District of Missouri have examined whether the defendant had "clues" regarding the existence of federal jurisdiction and whether he or she timely pursued those "clues." *See id.* at *3-*4; *McHugh*, 953 F. Supp. at 300.

The first documents that Plaintiffs argue provided notice of their directed brokerage claims were the subpoenas duces tecum that were served by Plaintiffs on several mutual fund companies. Copies of these subpoenas were also served on Defendants beginning in January 2008. These subpoenas included the following definition of "revenue sharing":

> any contract, agreement, understanding, custom, business practice or arrangement by which YOU compensate A.G. EDWARDS in cash, commissions, transactions, step out arrangements, *directed brokerage* or otherwise based upon a dollar value of YOUR mutual funds that are held or sold by A.G. EDWARDS for itself or for the benefit of A.G. EDWARDS's clients.

(Glavin Dec. Ex. E, doc. #24-6, p.8) (emphasis added). This definition clearly provided Defendants with notice that Plaintiffs' claims for revenue sharing included directed brokerage. Defendants argue that they could not ascertain removability from the subpoenas because "they sought information on virtually every type of payment from a mutual fund to A.G. Edwards." (Defs.' Reply, doc. #43, p.11). However, the requests for information about these other types of

payments appeared in the actual requests included in the subpoena, while directed brokerage was actually included in the definition of revenue sharing.

Additionally, despite Defendants' arguments to the contrary, the Court finds that Plaintiffs' subpoenas constitute "other paper" within the meaning of 28 U.S.C. § 1446(b). "'Other paper' refers to such court processes even though not required to be filed, so long as these papers are part and parcel of the State Court proceedings having their origin and existence by virtue of the State Court processes." *Gilardi v. Atchison, Topeka & Santa Fe Ry. Co.*, 189 F. Supp. 82, 85 (N.D. Ill. 1960); *see also Golden Apple Mgmt. Co. v. GEAC Computers, Inc.*, 990 F. Supp. 1364, 1367 (M.D. Ala. 1998); *Essenson v. Coale*, 848 F. Supp. 987, 990 (M.D. Fla. 1994). "[F]ederal courts have given the reference to 'other paper' an embracive construction and have included a wide array of documents within its scope." 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3732 (3d ed. Supp. 2008). Courts generally construe discovery materials to be "other paper." *Id.*; *see also Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1078 (10th Cir. 1999) (finding that a deposition constitutes an "other paper"); *Allbee v. JPMorgan Chase Bank, N.A.*, 2008 U.S. Dist. LEXIS 63694, at *17 (N.D. Iowa Aug. 5, 2008) (finding response to request for admissions to be "other paper"); *John Hunter, Inc. v. Great Impressions Apparel, Inc.*, 313 F. Supp. 2d 644, 646 (N.D. Tex. 2002) (holding that "a request for admissions constitutes 'other paper' under 28 U.S.C. § 1446(b)); *Smith v. Int'l Harvester*, 621 F. Supp. 1005, 1008 (D. Nev. 1985) ("Answers to interrogatories or questions put at depositions may thus constitute the 'other paper' necessary to give notice that a state court action has become removable."). Plaintiffs' subpoenas are similar discovery materials that are a part of the proceedings in the state court. Thus, the Court finds that the subpoenas

duces tecum served by Plaintiffs constitute "other paper" that provided Defendants with notice that Plaintiffs' claims for revenue sharing included directed brokerage.

In addition to the subpoenas duces tecum discussed above, Defendants received other documents that provided notice that Plaintiffs' claims for revenue sharing included directed brokerage. On March 13, 2008, counsel for Plaintiffs, Mr. Kirk B. Hulett, sent a letter to counsel for Defendants, Mr. Jeffrey J. Kalinowski, regarding Defendants' objections to Plaintiffs' non-party subpoenas. The letter contained the following language:

> we will consider ["revenue sharing agreement"] to mean, any type of arrangement whereby A.G. Edwards or any of its affiliates receives any remuneration as a consequence of holding a mutual fund (including any asset based remuneration and any directed brokerage) other than dealer concessions from commissions, 12b-1 fees, and networking fees. . . . *Contrary to your assertions, we believe that directed brokerage is part of the revenue sharing (or "kickback") allegations in the Petition as currently pled.*"

(Glavin Dec. Ex. I, doc. #24-13, p.2) (emphasis added). This language, especially the italicized portion, made it clear that Plaintiffs intended for their revenue sharing claims to include directed brokerage. Defendants argue that the letter did not clearly state that Plaintiffs were seeking damages based on directed brokerage. This Court disagrees. The italicized language could not be more clear that Plaintiffs were indeed seeking such damages.

Again, Defendants argue that the document at issue doesn't qualify as "other paper," for the purpose of 28 U.S.C. § 1446(b). However, this Court finds that Mr. Hulett's letter to opposing counsel does qualify as "other paper." There appears to be a split of authority regarding whether correspondence between attorneys constitutes "other paper." *Compare Efford v. Milam*, 368 F. Supp. 2d 380, 386 (E.D. Pa. 2005) (letter from plaintiffs' counsel which established federal cause of action constituted "other paper"); *Polk v. Sentry Ins.*, 129 F. Supp. 2d 975, 979 (S.D.

8

Miss. 2000) ("the correspondence at issue, under the proper circumstances, may be accorded 'other paper' status under the removal statute"); *Rahwar v. Nootz*, 863 F. Supp. 191, 192 (D. N.J. 1994) ("Correspondence between parties, similar to the statement of damages letter at issue in this case, specifically has been held sufficient to support removal."); *Broderick v. Dellasandro*, 859 F. Supp. 176, 179-80 (E.D. Pa. 1994) (finding letter confirming residence of plaintiffs constituted "other paper"); *Hessler v. Armstrong World Indus., Inc.*, 684 F. Supp. 393, 394-95 (D. Del. 1988) (finding that letters and statements made in court provided adequate notice of removability); *with Woodward v. Employers Cas. Co.*, 785 F. Supp. 90, 91 (S.D. Tex. 1992) ("the Court is unaware of any Fifth Circuit or Supreme Court authority supporting the proposition that removal can be based on the contents of a letter between counsel"); *Interior Glass Servs., Inc. v. F.D.I.C.*, 691 F. Supp. 1255, 1257 (D. Alaska 1988) (finding that a lawyer's letter does not constitute "other paper"); *Bonnell v. Seaboard Air Line R.R. Co.*, 202 F. Supp. 53, 55 (N.D. Fla. 1962) ("This court holds that mere correspondence between counsel for plaintiffs and defendant is not sufficient to bring plaintiffs' correspondence into the definition of 'other paper' as set forth by the courts above."). While there are no Eighth Circuit cases directly on point, district courts within the Eighth Circuit have found that a demand letter from a plaintiff's counsel constitutes "other paper" under 28 U.S.C. § 1446(b). *See, e.g.*, *Groeneweg v. Flint Hills Res., LP*, 2008 U.S. Dist. LEXIS 93723, at *7 (D. Minn. 2008); *Metzger v. Wal-Mart Stores, Inc.*, 2007 U.S. Dist. LEXIS 62387, at *5 (E.D. Mo. 2007); *LaPree v. Prudential Fin.*, 385 F. Supp. 2d 839, 850 (S.D. Iowa 2005); *Williams v. Safeco Ins. Co. of Am.*, 74 F. Supp. 2d 925, 929 (W.D. Mo. 1999). This Court finds that these demand letter cases are sufficiently analogous to the situation at hand and demonstrate a willingness to consider attorney correspondence when deciding if

removal was timely. *See Efford v. Milam*, 368 F. Supp. 2d 380, 385 (E.D. Pa. 2005) (relying on demand letter cases to determine that letter about the basis of the lawsuit constituted "other paper"). Considering the "embracive construction" federal courts give to the term "other paper," 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3732 (3d ed. Supp. 2008), this Court finds that correspondence between attorneys does qualify as "other paper" under 28 U.S.C. § 1446(b).

Additionally, Plaintiffs point to their Response to Defendants' Motion to Quash to demonstrate that Defendants knew that Plaintiffs' claims for revenue sharing included directed brokerage. The Response was filed on April 16, 2008 in the Circuit Court of the City of St. Louis, Missouri, and included the following:

> We allege in the Petition that mutual funds paid AG Edwards large amounts of consideration, including cash. . . . *AG Edwards does not and can not deny that directed brokerage is a form of consideration it received as a quid pro quo for amounts AG Edwards' clients held in a particular account.* Indeed, as the document presented to the Court confidentially at oral argument makes clear, AG Edwards itself, in internal documents, referred to payments made for directed brokerage (payments on executions of sales) as in fact being revenue sharing.

(Glavin Dec. Ex. M, doc. #24-17, p.2) (emphasis added and omitted). Again, this language made it clear that Plaintiffs understood directed brokerage to be a form of revenue sharing and that they intended their claims to include directed brokerage. Defendants argue that Plaintiffs' brief concerned discovery and not damages and, thus, did not reflect that Plaintiffs were seeking directed brokerage as damages. This argument misses the point. Even though Plaintiffs' statements about directed brokerage were made in the *context* of a discovery dispute, the statements were made with respect to the overall dispute. Defendants improperly focus on the

particular words that were not included, instead of taking note of the practical meaning of the actual words that were used.

Additionally, the Court finds that Plaintiffs' Response to Defendants' Motion to Quash qualifies as "other paper" under 28 U.S.C. § 1446(b). Defendants have not argued to the contrary, and various courts have held that a response to an opposing party's motion constitutes "other paper." *See, e.g.*, *Jackson v. Brooke*, 626 F. Supp. 1215, 1217 (D. Colo. 1986) (finding that plaintiff's response to motion for summary judgment was "other paper" providing notice of removability); *Gray v. Rite Aid Corp.*, 189 F. Supp. 2d 347, 349-50 (D. Md. 2002) (finding that plaintiffs' opposition to motion to dismiss was "other paper" that informed defendant that case was removable). Thus, the Court finds that Plaintiffs' Response to Defendants' Motion to Quash constitutes "other paper" that provided Defendants with notice that Plaintiffs' claims for revenue sharing included directed brokerage.

The Court finds that Defendants received several "motions, orders and other papers" which established that Plaintiffs were seeking directed brokerage prior to the deposition of Ms. Joan Warning on December 11, 2008.[1] At a minimum, these documents provided Defendants with adequate "clues" that federal jurisdiction might exist[2]; but, Defendants failed to timely pursue those "clues." *Stewart v. Mayberry*, 2009 WL 1735773, at *3-*4 (E.D. Mo. June 18, 2009);

---

[1]The Court notes that Plaintiffs cited numerous "motions, orders and other papers" that they contend provided notice of their directed brokerage claims prior to the deposition of Ms. Warning. For the sake of brevity, the Court did not address all of the documents cited by Plaintiffs. Rather, the Court focused on those documents that most clearly notified Defendants that Plaintiffs' claims for revenue sharing included directed brokerage.

[2]The Court has not made a determination regarding whether the inclusion of directed brokerage would even create federal jurisdiction in this case. The Court remands the case on the basis of procedural defects, without reaching the Parties' substantive arguments.

*McHugh v. Physicians Health Plan of Greater St. Louis*, 953 F. Supp. 296, 300 (E.D. Mo. 1997). All of these documents were received more than thirty days before Defendants filed their Notice of Removal on January 9, 2009. Thus, the Notice of Removal was not timely filed under 28 U.S.C. § 1446(b) and the case must be remanded to the Circuit Court of the City of St. Louis, Missouri. As a result of this conclusion, it is not necessary for the Court to reach the issue of whether it was ascertainable from the initial petition that Plaintiffs' claims for revenue sharing included directed brokerage. Even if the Court found that it was not ascertainable, Defendants' Notice of Removal would still not have been timely filed. Additionally, because this Court has determined that the procedural requirements of 28 U.S.C. § 1446(b) have not been met and the case must be remanded, the Court will not address Defendants' substantive arguments that Plaintiffs' claims are precluded by SLUSA. *See Link Telecomms., Inc. v. Sapperstein*, 119 F. Supp. 2d 536, 542 (D. Md. 2000) (citing *McHugh*, 953 F. Supp. at 297).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand [doc. #21] is **GRANTED**. This action is remanded to the Circuit Court of the City of St. Louis, Missouri.

**IT IS FURTHER ORDERED** that Defendants' Motion for Judgment Dismissing the Class Action Pursuant to SLUSA [doc. #13] is **DENIED, as moot**.

Dated this 22nd Day of July, 2009.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE